**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| BRENDA HAWKINS, and DEREK EINERSEN, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>          v.<br><br>DANAHER CORPORATION, RAINER M. BLAIR, MATT MCGREW, and EMMANUEL LIGNER,<br><br>          Defendants. | Case No. 1:23-cv-02055 (AHA) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
<u>CLASS ACTION SETTLEMENT</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...............................................................................................................2

      A.     Relevant Procedural History ................................................................2

      B.     Settlement Discussions and Negotiations ...............................................5

      C.     Key Terms of the Settlement ...............................................................6

      D.     Settlement Administration ...................................................................7

STANDARD OF REVIEW ................................................................................................7

ARGUMENT ....................................................................................................................8

I.     THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS ....................................................................................................................8

      A.     The Proposed Class Satisfies All Requirements of Rule 23 ....................9

             1.     The Class Is Indisputably Too Numerous to Make Joinder Practicable ..............................................................................9

             2.     There Are Ample Questions of Law or Fact Common to the Class ..........11

             3.     Plaintiffs' Claims Are Typical of Those of the Class ................................12

             4.     Plaintiffs Will Adequately Protect the Interests of the Class ....................13

             5.     Common Issues Predominate Over Individual Ones ................................15

             6.     A Class Action is Vastly Superior to Other Methods of Adjudication ..............................................................................16

      B.     Plaintiffs and their Counsel Adequately Represented the Class .............19

II.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL ......................................20

      A.     Plaintiffs and Lead Counsel Have Adequately Represented the Class ..................21

      B.     The Settlement Resulted from Informed Arm's-Length Negotiations ..................22

      C.     The Relief Provided to the Class by the Settlement Is More than Adequate .........24

      D.     The Settlement Treats all Class Members Equitably ............................31

III.    THE FORM AND CONTENT OF THE NOTICE PROGRAM ARE SOUND ...............32

IV.    PROPOSED SCHEDULE OF EVENTS..........................................................................35

CONCLUSION.........................................................................................................................35

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                          **Page(s)**

*In re Allergan PLC Sec. Litig.*,
    2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021)................................................................................9, 13

*In re Alphabet, Inc. Sec. Litig.*,
    2024 WL 4354988 (N.D. Cal. Sept. 30, 2024) ........................................................................33

*Alvarez v. Keystone Plus Constr. Corp.*,
    303 F.R.D. 152 (D.D.C. 2014)....................................................................................................9

*In re Am. Apparel, Inc. S'holder Litig.*,
    2014 WL 10212865 (C.D. Cal. July 28, 2014)........................................................................25

*Am. Security Vanlines, Inc. v. Gallagher*,
    782 F.2d 1056 (D.C. Cir. 1986)..................................................................................................7

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................................8, 15, 16, 19

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013)..................................................................................................................15

*Angelica S. v. U.S. Dep't of Health & Human Servs.*,
    786 F. Supp. 3d 158 (D.D.C. 2025)..........................................................................................11

*In re APA Assessment Fee Litig.*,
    311 F.R.D. 8 (D.D.C. 2015)................................................................................................22, 23

*In re Apple Inc. Sec. Litig.*,
    2022 WL 354785 (N.D. Cal. Feb. 4, 2022) ..............................................................................16

*In re Baan Co. Sec. Litig.*,
    2002 WL 32307825 (D.D.C. July 19, 2002)................................................................10, 13, 16

*In re Baan Co. Sec. Litig.*,
    284 F. Supp. 2d 62 (D.D.C. 2003) ...........................................................................................26

*Baker v. SeaWorld Ent., Inc.*,
    2020 WL 4260712 (S.D. Cal. July 24, 2020) ..........................................................................26

*Baker v. SeaWorld Ent., Inc.*,
    2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ............................................................................33

*Barnes v. Dist. of Columbia*,
    242 F.R.D. 113 (D.D.C. 2007)..................................................................................................10

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)................................................................................16

*Bhangal v. Hawaiian Elec. Indus., Inc.*,
    2026 WL 587164 (N.D. Cal. Mar. 3, 2026)............................................28

*In re Black Farmers Discrimination Litig.*,
    856 F. Supp. 2d 1 (D.D.C. 2011)...........................................................34

*In re BofI Holding, Inc. Sec. Litig.*,
    977 F.3d 781 (9th Cir. 2020) .................................................................13

*In re BP p.l.c. Sec. Litig.*,
    2016 WL 7668474 (S.D. Tex. Nov. 4, 2016) ..........................................33

*Bratya SPRL v. Bed Bath & Beyond Corp.*,
    752 F. Supp. 3d 34 (D.D.C. 2024)...............................................10, 11, 12

*In re Broadcom Corp. Sec. Litig.*,
    2005 WL 8153007 (C.D. Cal. Sept. 12, 2005) .......................................28

*Bynum v. Dist. of Columbia*,
    412 F. Supp. 2d 73 (D.D.C. 2006) .........................................................30

*Califano v. Yamasaki*,
    442 U.S. 682 (1979)...............................................................................18

*Ceccone v. Equifax Info. Servs. LLC*,
    2016 WL 5107202 (D.D.C. Aug. 29, 2016) ............................................24

*Christine Asia Co. v. Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)..........................................32

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) ............................................................25

*Coleman ex rel. Bunn v. Dist. of Columbia*,
    306 F.R.D. 68 (D.D.C. 2015)......................................................10, 11, 17

*In re Cooper Cos. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009)...................................................9, 10, 16

*In re Deutsche Bank AG Sec. Litig.*,
    328 F.R.D. 71 (S.D.N.Y. 2018) ..............................................................17

*Dew v. Mindfinders, Inc.*,
    2021 WL 4797551 (D.D.C. Oct. 14, 2021) .............................................22

*DL v. Dist. of Columbia,*
302 F.R.D. 1 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017) ........................................14

*DL v. Dist. of Columbia,*
713 F.3d 120 (D.C. Cir. 2013) .................................................................................................11

*In re Domestic Airline Travel Antitrust Litig.,*
378 F. Supp. 3d 10 (D.D.C. 2019) ...................................................................................7, 20, 33

*In re DVI Inc. Sec. Litig.,*
249 F.R.D. 196 (E.D. Pa. 2008), *aff'd*, 639 F.3d 623 (3d Cir. 2011) ......................................18

*In re Envision Healthcare Corp. Sec. Litig.,*
2023 WL 8110157 (M.D. Tenn. Nov. 20, 2023) ......................................................................33

*Erica P. John Fund, Inc. v. Halliburton Co.,*
563 U.S. 804 (2011) .................................................................................................................16

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.,*
275 F.R.D. 382 (D. Mass. 2011) ..............................................................................................17

*In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class
Action Litig.,*
2021 WL 5799379 (D.D.C. Dec. 7, 2021) ...............................................................................12

*\*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative & ERISA Litig.,*
247 F.R.D. 32 (D.D.C. 2008) .........................................................................................9, 10, 12

*\*In re Fed. Nat'l Mortg. Ass'n Sec. Derivative & ERISA Litig.,*
4 F. Supp. 3d 94 (D.D.C. 2013) ........................................................................................ *passim*

*Freeland v. Iridium World Commc'ns, Ltd.,*
No. 1:99-cv-1002 (D.D.C. Oct. 23, 2008) ...............................................................................30

*Freeport Partners, L.L.C. v. Allbritton,*
2006 WL 627140 (D.D.C. Mar. 13, 2006) ...............................................................................14

*Glickenhaus & Co. v. Household Int'l, Inc.,*
787 F.3d 408 (7th Cir. 2015) ...................................................................................................27

*In re GSE Bonds Antitrust Litig.,*
414 F. Supp. 3d 686 (S.D.N.Y 2019) .......................................................................................25

*\*Gur-Ravantab v. Georgetown Univ.,*
2024 WL 3443481 (D.D.C. July 16, 2024) ...............................................................9, 20, 22, 30

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) .................................................................................................24

*Harris v. Koenig*,
   271 F.R.D. 383 (D.D.C. 2010)..................................................................................................14

*Hester v. Vision Airlines, Inc.*,
   2014 WL 3547643 (D. Nev. July 17, 2014) ...........................................................................25

*\*Howard v. Liquidity Servs. Inc.*,
   2018 WL 4853898 (D.D.C. Oct. 5, 2018) .............................................................20, 23, 24, 25

*\*Howard v. Liquidity Servs. Inc.*,
   322 F.R.D. 103 (D.D.C. 2017).................................................................................11, 12, 14, 18

*In re Illumina, Inc. Sec. Litig.*,
   2019 WL 6894075 (S.D. Cal. Dec. 18, 2019)..........................................................................31

*In re ImmunityBio, Inc. Sec. Litig.*,
   2025 WL 834767 (S.D. Cal. Mar. 17, 2025) ..............................................................16, 29, 31

*In re Infineon Tech. AG Sec. Litig.*,
   266 F.R.D. 386 (N.D. Cal. 2009)..............................................................................................18

*In re IPO Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009).......................................................................................28

*JD v. Azar*,
   925 F.3d 1291 (D.C. Cir. 2019).........................................................................................12, 14

*Jones v. Chopra*,
   2023 WL 6037295 (D.D.C. Sept. 15, 2023) ............................................................................32

*Kifafi v. Hilton Hotels Ret. Plan*,
   999 F. Supp. 2d 88 (D.D.C. 2013) ...........................................................................................32

*Kiken v. Lumber Liquidators Holdings, Inc.*,
   2014 WL 12588686 (E.D. Va. May 14, 2014) .........................................................................20

*Kinard v. E. Capitol Family Rental, L.P.*,
   331 F.R.D. 206 (D.D.C. 2019)..................................................................................................22

*Little v. Wash. Metro. Area Transit Auth.*,
   313 F. Supp. 3d 27 (D.D.C. 2018).....................................................................................23, 32

*In re LivingSocial Marketing & Sales Practice Litig.*,
   298 F.R.D. 1 (D.D.C. 2013).......................................................................................................24

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   205 F.R.D. 369 (D.D.C. 2002)..................................................................................................18

*Mayfield v. Barr*,
   985 F.2d 1090 (D.C. Cir. 1993)............................................................................7

*Meijer, Inc. v. Barr Pharm., Inc.*,
   2009 WL 10744520 (D.D.C. Apr. 20, 2009).........................................................32

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*,
   565 F. Supp. 2d 49 (D.D.C. 2008)........................................................................20

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007)..........................................................................28

*In re MF Glob. Holdings Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015)..........................................................................19

*Nat'l Veterans Legal Servs. Program v. United States*,
   235 F. Supp. 3d 32 (D.D.C. 2017).......................................................................14

*Nat'l Veterans Legal Servs. Program v. United States*,
   724 F. Supp. 3d 1 (D.D.C. 2024)..........................................................................34

*In re Newbridge Networks Sec. Litig.*,
   1998 WL 765724 (D.D.C. Oct. 23, 1998) ........................................................23, 26

*In re Newbridge Networks Sec. Litig.*,
   926 F. Supp. 1163 (D.D.C. 1996)..........................................................................11

*In re Nifedipine Antitrust Litig.*,
   2011 WL 13392312 (D.D.C. Jan. 31, 2011).....................................................30, 32

*In re N. Dynasty Minerals Ltd. Sec. Litig.*,
   2023 WL 5511513 (E.D.N.Y. Aug. 24, 2023).......................................................29

*In re Novastar Fin. Sec. Litig.*,
   2007 WL 465649 (W.D. Mo. Feb. 8, 2007) ..........................................................17

*Palm Tran, Inc.-Amalgamated Transit Union Local 1577 Pension Plan v.
   Emergent Biosolutions Inc.*,
   2021 WL 6072812 (D. Md. Dec. 23, 2021)............................................................20

*Pearlstein v. BlackBerry Ltd.*,
   2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)...................................................31, 33

*Peters v. Nat'l R.R. Passenger Corp.*,
   966 F.2d 1483 (D.C. Cir. 1992)............................................................................33

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ............................................................................16

*Radosti v. Envision EMI, LLC*,
   717 F. Supp. 2d 37 (D.D.C. 2010) ....................................................................22, 24

*Randle v. SunTrust Bank, Inc.*,
   2024 WL 706807 (D.D.C. Feb. 21, 2024) .........................................................31, 32

*Ret. Sys. v. Energy Transfer LP*,
   623 F. Supp. 3d 470 (E.D. Pa. 2022) .......................................................................17

*Richardson v. L'Oreal USA, Inc.*,
   951 F. Supp. 2d 104 (D.D.C. June 27, 2013)...........................................................30

*Rougier v. Applied Optoelectronics, Inc.*,
   2019 WL 6111303 (S.D. Tex. Nov. 13, 2019) .........................................................18

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
   571 F. Supp. 2d 1315 (N.D. Ga. 2007) ....................................................................14

*In re SCOR Holding (Switz.) AG Litig.*,
   537 F. Supp. 2d 556 (S.D.N.Y. 2008).......................................................................18

*Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*,
   2023 WL 7180604 (N.D. Ala. Aug. 25, 2023) .........................................................33

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) .....................................................26, 29

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs, Inc.*,
   2023 WL 1454371 (M.D. Pa. Feb. 1, 2023) ......................................................29, 31

*Stephens v. Farmers Rest. Grp.*,
   329 F.R.D. 476 (D.D.C. Feb. 15, 2019)....................................................................22

*In re Surebeam Corp. Sec. Litig.*,
   2004 WL 5159061 (S.D. Cal. Jan. 5, 2004)..............................................................12

*In re Teva Sec. Litig.*,
   2021 WL 872156 (D. Conn. Mar. 9, 2021) ..............................................................16

*Thomas v. Albright*,
   139 F.3d 227 (D.C. Cir. 1998)....................................................................................9

*In re Thornburg Mortg., Inc. Sec. Litig.*,
   912 F. Supp. 2d 1178 (D.N.M. 2012) ......................................................................17

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016)..................................................................................................15

*In re Vitamins Antitrust Litig.*,
  2001 WL 34312839 (D.D.C. July 16, 2001)................................................................30

*In re Vitamins Antitrust Litig.*,
  305 F. Supp. 2d 100 (D.D.C. 2004) ...........................................................................22

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011)..........................................................................27

*Wagner v. Taylor*,
  836 F.2d 578 (D.C. Cir. 1987)....................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)....................................................................................................11

**Statutes**

15 U.S.C. § 78u-4 .............................................................................................................34

Private Securities Litigation Reform Act of 1995 .................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

**Other Authorities**

4 William B. Rubenstein, Newberg on Class Actions (5th ed. 2018) ...........................21

7 William B. Rubenstein, Newberg & Rubenstein on Class Actions.......................9, 12

Manual for Complex Litigation (Fourth) § 13.14 (2004) ..............................................8

Lead plaintiff Brenda Hawkins ("Lead Plaintiff") and additional plaintiff Derek Einersen (together, "Plaintiffs") respectfully submit this memorandum of points and authorities in support of their unopposed motion for preliminary approval of class action settlement (the "Motion").[1]

## PRELIMINARY STATEMENT

After almost three years of hotly contested and hard-fought litigation, Plaintiffs have reached a Settlement with Defendants to resolve all claims in exchange for $172.5 million in cash, the terms of which are set forth in the accompanying Stipulation. At this time, Plaintiffs seek the Court's "preliminary approval" of the Settlement under Rule 23(e)(1) of the Federal Rules of Civil Procedure (the "Rules") so that notice of the Settlement can be provided to the proposed Class and a Settlement Fairness Hearing can be scheduled to consider whether to grant final approval.

The proposed Settlement is highly deserving of preliminary approval. The Settlement is the product of arm's-length negotiations reached with the aid of a highly experienced mediator at a unique inflection point in the case. In agreeing to settle, Plaintiffs and Lead Counsel were fully aware of the strengths and weaknesses of Plaintiffs' claims and made a well-informed evaluation of the risks and costs of continuing to litigate this complex case against the benefits of settling at this time. In the absence of settlement, Plaintiffs and the Class faced the very real risk that they could receive an adverse ruling on their pending motion for class certification, at summary judgment, after a lengthy and complex trial, or on appeal—any of which could preclude *any* recovery for the Class, let alone a recovery greater than the Settlement Amount. The Settlement provides immediate and substantial relief for Class Members and eliminates the risks, costs, and delay associated with continued proceedings, including contested motions for class certification and summary judgment, a

---

[1] Citations to "Ex." refer to the exhibits attached to the accompanying Declaration of Justin D. D'Aloia ("D'Aloia Decl.") or Daniel S. Sommers ("Sommers Decl."). All capitalized terms not otherwise defined herein have the meaning set forth in the Stipulation of Settlement, dated April 20, 2026, attached as Ex. 1 (the "Stipulation"). All citations and internal quotations in legal citations are omitted unless otherwise noted.

battle of expert witnesses, or an unfavorable result at trial or on appeal.

At the Settlement Fairness Hearing, the Court will have before it more extensive submissions in support of the Settlement and will be asked to determine whether it is fair, reasonable, and adequate within the meaning of Rule 23(e)(2). For now, Plaintiffs respectfully request entry of the Preliminary Approval Order so they may provide notice of the Settlement to Class Members. The Preliminary Approval Order will: (i) preliminarily approve the Settlement; (ii) preliminarily certify the Class for purposes of the Settlement and appoint Plaintiffs as Class representatives, Pomerantz as Class counsel, and Cohen Milstein as Class liaison counsel; (iii) approve the form and content of providing notice of the Settlement to the Class; and (iv) set a date for the Settlement Fairness Hearing as well as other deadlines associated with the Settlement. The Preliminary Approval Order contains all the findings necessary for the Court to do so and is fully supported on the record before the Court. Accordingly, the Court should grant Plaintiffs' Motion and enter the Preliminary Approval Order with any modifications it deems just and proper.

## BACKGROUND

### A.      Relevant Procedural History

On July 17, 2023, Brenda Hawkins filed a complaint against Danaher Corporation, Ranier M. Blair, and Matt McGrew for violations of the federal securities laws. ECF No. 1. In an Order dated October 16, 2023, the Court appointed Brenda Hawkins as Lead Plaintiff and approved her selection of Pomerantz LLP ("Pomerantz") as Lead Counsel and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel. ECF No. 22.

On December 29, 2023, Brenda Hawkins and additional plaintiff Derek Einersen filed the operative First Amended Complaint ("FAC") (ECF No. 24) following an extensive investigation by Lead Counsel that involved, among other things, review and analysis of regulatory filings made with the U.S. Securities and Exchange Commission ("SEC"), securities analyst reports, press releases,

and news reports, as well as interviews with former employees, and consultation with experts. FAC pbml. The FAC asserted claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder on behalf of a class of all persons and entities who purchased or otherwise acquired Danaher securities between January 27, 2022, and October 23, 2023, both dates inclusive (the "Class Period") for making false or misleading statements during that time concerning the performance of the business that offered equipment used to manufacture biopharmaceutical vaccines and therapeutics, known as the "bioprocessing business." *Id.* The FAC further alleged that the price of Danaher's common stock was artificially inflated as a result of Defendants' allegedly false or misleading statements and declined in response to five partial disclosures between October 20, 2022, and October 24, 2023, causing harm to investors. *Id.*

On February 27, 2024, Defendants filed a motion to dismiss (the "Motion to Dismiss") for failure to state a claim under Rule 9(b) and the heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). ECF Nos. 28-30. Plaintiffs filed comprehensive opposition papers in response to the Motion to Dismiss on April 29, 2024 (ECF Nos. 32, 33), and Defendants filed reply papers on June 13, 2024 (ECF Nos. 34, 35).

On August 4, 2025, the Court entered a Memorandum Opinion and Order granting in part and denying in part Defendants' Motion to Dismiss. ECF No. 37. Although the Court granted the Motion for certain forward-looking statements and a few statements determined to qualify as immaterial puffery, it denied the Motion with respect to statements of present fact from nearly every disclosure challenged in the FAC. *Id.* at 9-13. The Court further held that forecasts made on the investor call held on April 21, 2022, were not protected by the PSLRA safe harbor and were adequately alleged to be false. *Id.* at 18. The Court also sustained Plaintiffs' claim for secondary liability under Section 20(a) of the Exchange Act. *Id.* at 19.

- 3 -

To facilitate the swift commencement of discovery, the Parties negotiated and submitted a proposed protective order, a protocol for electronic discovery, and a joint case schedule after conferring on the matters set forth in Rule 26(f) and the Local Civil Rules of the Court, noting disagreements as necessary.  ECF Nos. 39, 40, 42.  On September 16, 2025, the Court entered the Stipulated Order for the Production and Use of Confidential Information reached between the Parties (ECF No. 41) and discovery in the Action commenced.  As agreed between the Parties and ordered by the Court, Defendants answered the FAC on October 2, 2025.  ECF Nos. 38, 43.

Counsel for the Parties appeared for an in-person scheduling conference before the Court on October 16, 2025, during which the Court endorsed the Parties' proposal to conduct merits discovery in tandem with class certification discovery through the deadline for class certification discovery. The following day, the Court entered a scheduling order, which, among other things: (i) set January 29, 2026, as the deadline to substantially complete the production of documents related to class certification; (ii) set February 27, 2026, as the deadline to file a motion for class certification; and (iii) directed the Parties to complete fact discovery by September 15, 2026.  ECF No. 44.  By January 29, 2026, the Parties substantially completed the production of documents related to class certification and turned their attention to remaining merits discovery.  Throughout this time, the Parties served a variety of discovery requests, conferred frequently to address disagreements regarding the proper scope of discovery, and received meaningful non-public information bearing on the merits of their claims and defenses.

In the midst of these ongoing discovery efforts, on February 27, 2026, Plaintiffs filed a motion for class certification along with supporting papers, including an expert report from Dr. Zachary Nye.  ECF No. 46.  The motion sought to certify a class consisting of all persons and entities who purchased or otherwise acquired Danaher common stock during the Class Period and

were damaged thereby, except various affiliates of Defendants specifically excluded. *Id.* Defendants issued notices to depose Plaintiffs and their expert, which Lead Counsel scheduled and prepared to defend. *See* Minute Order, dated March 16, 2026.

### B.   Settlement Discussions and Negotiations

As required by Rule 26(f), counsel for the Parties discussed the potential for an early resolution following the entry of the Order on Defendants' Motion to Dismiss but agreed at that time that it was too early to meaningfully engage and that discovery could potentially facilitate discussions. D'Aloia Decl. ¶ 7. After completing an initial phase of discovery that gave both sides a better understanding of the case, the Parties recognized that a window opened for settlement discussions before incurring the substantial costs associated with class certification, depositions, and remaining fact and expert discovery. D'Aloia Decl. ¶ 8. The Parties agreed to mediate before David Murphy of Phillips ADR, a mediator with extensive experience in complex commercial litigation in federal court, including securities class actions. Stipulation at 3. In anticipation of the mediation, exchanged detailed opening and reply mediation statements outlining their positions on topics such as liability and damages, together with supporting evidence developed in discovery. *Id.*

On March 23, 2026, the Parties attended an all-day, in-person mediation. *Id.* After a full day of negotiations facilitated by the mediator, David Murphy issued a mediator's recommendation to resolve the Action for $172.5 million in cash, subject to the negotiation of the terms of a stipulation of settlement and approval by the Court, which the Parties accepted. *Id.* After subsequent negotiations, counsel for the Parties memorialized the key terms of their agreement in a Confidential Term Sheet, executed on March 26, 2026. *Id.* at 3-4. Between March 26, 2026, and April 20, 2026, counsel for the Parties negotiated all terms and conditions of the Settlement in the Stipulation, which they executed on April 20, 2026. *See* Ex. 1.

### C.    Key Terms of the Settlement

This Settlement provides that Defendants will pay or cause to be paid $172,500,000 into an interest-bearing escrow account for the benefit of the Class (the "Settlement Fund").  Stipulation ¶¶ 1.43, 2.1.  Notably, this is not a claims-made Settlement; no portion of the Settlement Fund will revert to Defendants.  *Id.* ¶ 2.3.  After paying Taxes and Tax Expenses, Notice and Claims Administration Expenses, any Fee and Expense Award, and any other Court-approved deductions have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, will be distributed to Authorized Claimants pursuant to the proposed Plan of Allocation.  *Id*. ¶¶ 6.3, 6.8.

Within 21 days of the entry of a preliminary approval order (the "Notice Date"), the Claims Administrator will (i) email or mail a copy of the Summary Notice (Stipulation Ex. A-3) to all Class Members who can be identified through reasonable effort, including all those included on the list of record owners maintained by Danaher's transfer agent; (ii) use its proprietary database to mail a copy of the full Notice (Stipulation Ex. A-1) to all known brokers and nominees who hold securities on behalf of beneficial owners; and (iii) establish a dedicated Settlement website at www.danahersecuritiessettlement.com that contains a copy of Settlement-related documents, including the full Notice.  *Id.* Ex. A ¶ 9(a)-(b).  Seven days later, the Summary Notice will be published in *The Wall Street Journal* and a national newswire service.  *Id.* ¶ 9(c).  The Summary Notice directs Class Members to the Settlement website to access the full Notice.  *Id.* Ex. A-3.

As explained in the Notice and Summary Notice, any Class Member who wishes to receive a distribution from the Net Settlement Fund must establish that they are entitled to a share of the proceeds by submitting a Proof of Claim (Stipulation Ex. A-2) supported by such documents described therein within 90 days of the Notice Date.  Stipulation Exs. A-1 ¶ 9, A-3 at 2.  The Notice and Summary Notice also advise that Claimants can submit a Proof of Claim online at the Settlement website.  *Id.*  Each Proof of Claim will be processed and validated by the Claims Administrator, who

- 6 -

will follow up with Claimants as necessary to ensure complete submissions. Stipulation ¶ 6.5. Any Claimant whose Proof of Claim is rejected in whole or part will receive notice of the decision and have an opportunity to remedy any curable defects or request Court review. *Id.* ¶¶ 6.5-6.6.

The Parties have the right to terminate the Settlement in the event it does not become Final. *Id.* ¶ 8.2. As is standard, Danaher also has the right to terminate the Settlement if requests for exclusion exceed an agreed-upon threshold set forth in a confidential Supplemental Agreement between the Parties. *Id.* ¶ 8.3. In the event the Settlement is terminated, the Parties will revert to their respective positions in the litigation before their agreement to enter into a Settlement. *Id.* ¶ 9.5.

### D.     Settlement Administration

Plaintiffs have selected Verita Global, LLC ("Verita") to serve as Claims Administrator for the Settlement. Lead Counsel solicited and received bids from five settlement claims administration firms and selected Verita after assessing its bid to be the most cost-effective of those submitted. D'Aloia Decl. ¶ 11. Lead Counsel has worked Verita on prior occasion and believes it is well-suited to execute the administration process in this Action. *Id.* Verita is a nationally recognized claims administrator with extensive experience administering some of the largest securities class action settlements. *See* Ex. 2.

### STANDARD OF REVIEW

In this Circuit, there is a "strong public policy" that courts should "favor" the voluntarily settlement of civil disputes. *Am. Security Vanlines, Inc. v. Gallagher*, 782 F.2d 1056, 1060 (D.C. Cir. 1986) (collecting cases). This is especially true for class action lawsuits, "which are often complex, drawn out proceedings demanding a large share of finite judicial resources." *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993); *see also In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 16 (D.D.C. 2019) ("Class action settlements are favored as a matter of public policy in the District of Columbia Circuit.") (collecting cases).

However, Rule 23(e) specifies that claims in a class action may be settled only with the Court's approval.  To that end, Rule 23(e) outlines a two-step process for approving a proposed class action settlement.  First, a reviewing court must "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:  (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Second, after providing notice of the proposed settlement to the class, a reviewing court may then approve it only after a hearing and finding that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also* Manual for Complex Litigation (Fourth) § 13.14 (2004) (outlining the two-step process).

This Motion is limited to the first inquiry, often referred to as the "preliminary approval" stage.  As explained in the sections that follow, there is ample support for finding that:  (i) the Court will "likely" be able to certify a class for purposes of the Settlement; (ii) the Court will "likely" be able to approve the Settlement under Rule 23(e)(2); and (iii) the proposed manner and form of providing the notice is reasonable under the circumstances.

## ARGUMENT

## I.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

A district court may certify a class under Rule 23 only upon a showing that the proposed class satisfies the four requirements in Rule 23(a) and at least one provision of Rule 23(b).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  To effectuate the Settlement, Plaintiffs seek certification of the following Class pursuant to Rule 23(a) and 23(b)(3):

> All Persons who purchased or otherwise acquired Danaher common stock between January 27, 2022 and October 23, 2023, inclusive, and who were damaged thereby, except: (i) Defendants and members of their immediate families; (ii) any person who was a director or officer of Danaher during the Class Period; (iii) any entity in which any Defendant has or had a controlling interest; (iv) the legal representatives, heirs, successors, or assigns of any such excluded party; and (v) any Class member that submits a valid and timely request for exclusion from the Class in accordance with the requirements set by the Court.

At the preliminary approval stage—the stage where the court determines whether to direct notice to the class—the Court need not formally certify a class under Rule 23 but, rather, decide only if it will *likely* be able to do so. *Gur-Ravantab v. Georgetown Univ.*, 2024 WL 3443481, at *3 (D.D.C. July 16, 2024) (quoting Fed. R. Civ. P. 23(e)(1)(B)). That standard is readily satisfied.

## A. The Proposed Class Satisfies All Requirements of Rule 23

Rule 23(a) establishes four prerequisites that must be met to certify a class: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. Fed. R. Civ. P. 23(a). In addition, Rule 23(b)(3) provides that a class action may be maintained only if questions of law or fact common to the class "predominate" over individual ones and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

It is well-established that a class may be certified under Rule 23 for purposes of settlement only. *See Thomas v. Albright*, 139 F.3d 227, 234 (D.C. Cir. 1998); *see also Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 159 (D.D.C. 2014) ("Classes certified for settlement purposes only are a hallmark of class action litigation."). Securities fraud actions are also "particularly amenable to class certification." *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative & ERISA Litig.*, 247 F.R.D. 32, 41 (D.D.C. 2008) ("*Fannie Mae I*"); *see also* 7 William B. Rubenstein, Newberg & Rubenstein on Class Actions § 22:82 (Dec. 2025 supp.) (securities cases are a "paradigmatic" suit for class treatment). This is so because, in most, a common set of misstatements and omissions "inflict economic injury on large numbers of geographically dispersed persons" in the same way. *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *17 (S.D.N.Y. Sept. 8, 2021). In practice, securities fraud cases of this type "fit Rule 23 like a glove." *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009). Plaintiffs respectfully submit that this case is no exception.

### 1. The Class Is Indisputably Too Numerous to Make Joinder Practicable

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is

- 9 -

"impracticable." Fed. R. Civ. P. 23(a)(1). Impracticable simply means that it is "difficult or inconvenient to join all class members, not that it is impossible to do so." *Coleman ex rel. Bunn v. Dist. of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015). Numerosity is satisfied when "a proposed class has at least forty members." *Id.* In addition, a court can "draw reasonable inferences from the facts presented" to conclude that there are at least 40 members. *Id.*; *see also Barnes v. Dist. of Columbia*, 242 F.R.D. 113, 121 (D.D.C. 2007) (an "estimate" that has a "reasonable basis" is sufficient for purposes of Rule 23(a)(1)).

Consistent with these principles, numerosity is satisfied in securities cases brought on behalf of purchasers of a given security by showing that "a large number of shares were outstanding and traded during the relevant period." *Bratya SPRL v. Bed Bath & Beyond Corp.*, 752 F. Supp. 3d 34, 47 (D.D.C. 2024) ("*BBB*"); *see also Cooper*, 254 F.R.D. at 634 ("The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year."). During the almost two-year Class Period, Danaher had over 715 *million* shares of common stock outstanding (ECF No. 46-5 ("Nye Report") ¶ 25), and average trading volume of 2.7 million *per day* (AC ¶ 201(c)). That is more than enough to infer that joinder is impracticable. *See Fannie Mae*, 247 F.R.D. at 37 (numerosity satisfied when issuer had "967,903,726 shares of common stock" outstanding during relevant time and they were "actively traded" on the NYSE); *In re Baan Co. Sec. Litig.*, 2002 WL 32307825, at *5 (D.D.C. July 19, 2002) ("*Baan I*") (same when class includes "all purchasers of Baan shares on NASDAQ over a period of nearly two years, during which time millions of Baan ADRs were traded").

What is more, data from public SEC filings confirm that Danaher's common stock was held by at least 3,996 individuals or entities during the Class Period. Nye Report Ex. 9. As reflected therein, 3,969 (or 99.3%) those holders were financial institutions, many of whom, in lead counsel's

experience, often hold such shares on behalf of hundreds if not thousands of clients who are the true beneficial owners of such securities. ECF No. 46-2 ¶ 15. This, too, shows that the class is sufficiently numerous. *See BBB*, 752 F. Supp. 3d at 48 ("numerosity is satisfied" for seven-day class period when "the company had around 1,600 shareholders of record, who in turn represented additional beneficial owners"). Further, that same data confirms that 3,403 of those institutional holders increased their holdings of Danaher common stock between December 31, 2021, and December 31, 2023 (ECF No. 46-6), a period that roughly corresponds to the Class Period, meaning there are, at a minimum, approximately 3,403 members within the proposed Class. *See Angelica S. v. U.S. Dep't of Health & Human Servs.*, 786 F. Supp. 3d 158, 176 (D.D.C. 2025) (numerosity "easily met" for class comprising "large percentage" of "more than two thousand children").

### 2.    There Are Ample Questions of Law or Fact Common to the Class

Rule 23(a)(2) requires that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is met if there is a "common contention" the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Notably, "Rule 23(a)(2) does not require that all questions be common to the class." *DL v. Dist. of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013) ("*DL I*"). A "single common question will do . . . even if factual distinctions exist among the claims of putative class members." *Bunn*, 306 F.R.D. at 82. Questions of this type arise if there is a "uniform policy or practice that affects all class members" alike. *DL I*, 713 F.3d at 128.

Thus, "commonality often exists in securities class actions where investors sue for misrepresentations or omissions that had an impact on stock price." *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 118 (D.D.C. 2017) ("*Howard I*"); *see also In re Newbridge Networks Sec. Litig.*, 926 F. Supp. 1163, 1176 (D.D.C. 1996) ("[W]here members of a class are subject to the same misrepresentations and omissions . . . common questions exist and a class action is appropriate.").

- 11 -

Here, the exact same course of conduct—the issuance of false and misleading statements during the Class Period—is alleged to injure all Class members alike.  FAC ¶¶ 195-99, 214-22.  Accordingly, as in most cases of this type, there are a number of common questions that will determine Defendants' liability to the Class as a whole, including whether: (1) statements that Defendants made to the investing public during the Class Period were false or misleading; (2) Defendants made such statements with scienter; (3) the price of Danaher's common stock was artificially inflated as a result of such statements; (4) the price of Danaher's common stock declined in response to disclosures that revealed the truth; and (5) whether members of the Class have sustained damages and, if so, the proper measure.  Questions like these are routinely held to satisfy commonality.  *See BBB*, 752 F. Supp. 3d at 48 (Rule 23(a)(2) satisfied based on near-identical list of questions); *Howard I*, 322 F.R.D. at 118 (same); *see also Fannie Mae I*, 247 F.R.D. at 37 ("[A]llegations of securities fraud are common to the class.").

### 3. Plaintiffs' Claims Are Typical of Those of the Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality asks if "the claims or defenses of the representatives and the members of the class stem from a . . . unitary course of conduct" or "are based on the same legal or remedial theory."  *JD v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019).  In other words, "typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff."  *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litig.*, 2021 WL 5799379, at *6 (D.D.C. Dec. 7, 2021); *see also* 7 Rubenstein, *supra* p. 9, § 22:71 (typicality "focuses on the nature of the class representative's claim or defense and not on the specific facts from which that claim or defense arose").  Thus, "factual variations" between the claims of the representatives and those of the class do not defeat typicality.  *Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987); *see also, e.g., In re Surebeam*

*Corp. Sec. Litig.*, 2004 WL 5159061, at \*6 (S.D. Cal. Jan. 5, 2004) ("[D]ifferences in the amount of damages, the size or manner of stock purchaser, the nature of the purchaser, and even the specific document influencing the purchase will not render a claim atypical in most securities cases.").

Here, typicality is readily met. The proposed Class comprises all those who purchased or acquired Danaher common stock during the Class Period. Consistent with the fraud-on-the-market theory of liability, *see generally In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020), Plaintiffs allege that the members of the Class (i) purchased their Danaher common stock at prices that were artificially inflated by Defendants' misstatements; and (ii) were harmed when the true facts were subsequently disclosed and removed the inflation introduced by the earlier misstatements. FAC ¶¶ 195-99, 217, 220. As substantiated by their PSLRA certifications (ECF Nos. 1-1, 32-10) and broader transaction history (ECF No. 45-2), Plaintiffs, like all other Class members, purchased Danaher common stock during the Class Period before the full truth was known and continued to hold them when the price of those securities fell in response to disclosures that revealed the true facts. FAC ¶¶ 162-66. Thus, Plaintiffs seek redress for the exact same type of injury as all other Class members. Their claims are therefore typical of the claims of the Class. *See Baan I*, 2002 WL 32307825, at \*5 (Rule 23(a)(3) is satisfied when "all class members were subjected to the same misrepresentations . . . because the same course of conduct is alleged to have affected the representatives and the putative class"); *see also Allergan*, 2021 WL 4077942, at \*6-7 ("the dissemination of allegedly false or misleading statements" to representative party and absent class members is "generally considered sufficient to satisfy . . . typicality" in securities fraud cases).

### 4.    Plaintiffs Will Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, "the class representative (i) must not have antagonistic or conflicting interests with the unnamed members of the class and (ii)

- 13 -

must appear able to vigorously prosecute the interests of the class through qualified counsel." *JD*, 925 F.3d at 1312. The first cannot be grounded on "speculative" or "hypothetical" conflicts. *Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32, 41 (D.D.C. 2017). Further, real conflicts will preclude certification only if they are "fundamental to the suit and go to the heart of the litigation." *Id.* The second does not mandate that class representatives have "intricate knowledge of complex legal claims." *Howard I*, 322 F.R.D. at 135. Indeed, "named representatives are entitled to rely on counsel to conduct the litigation" in complex cases like this one. *Harris v. Koenig*, 271 F.R.D. 383, 391 (D.D.C. 2010) (citing *In re Avon Sec. Litig.*, 1998 WL 834366, at *9 (S.D.N.Y. Nov. 30, 1998)). Courts will deny certification on this ground only if the representative displays a "total lack of interest and unfamiliarity with the suit." *Howard I*, 322 F.R.D. at 135; *accord DL v. Dist. of Columbia*, 302 F.R.D. 1, 15 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017 ).

There are no fundamental conflicts between Plaintiffs and members of the putative Class. As parties with typical claims (Point I.A.3, *supra*), Plaintiffs suffered losses for the same reason as all other Class members. Thus, their interests are fully aligned to maximize the potential recovery. *See Freeport Partners, L.L.C. v. Allbritton*, 2006 WL 627140, at *7 (D.D.C. Mar. 13, 2006) (the "loss [plaintiff] claims to have suffered is identical to that allegedly incurred by other members of the class" and thus "its interests in this litigation . . . align perfectly with those of the class as a whole"); *see also, e.g.*, *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1332 (N.D. Ga. 2007) (a representative who suffers losses at any time during class period has incentive to establish liability "at every point in the class period . . . to maximize his own potential damages" because "the more the stock is inflated, the more every class member stands to recover"). To be sure, that is Plaintiffs' stated goal. *See* ECF No. 46-3 ("Hawkins Decl.") ¶ 8, ECF No. 46-4 ("Einersen Decl.") ¶ 8; *see also* ECF No. 17-4 ¶ 5 ("My principal goal" is "to achieve the best possible recovery for the Class").

- 14 -

Consequently, Plaintiffs have, and will continue to, vigorously prosecute the claims asserted on behalf of the Class.  Since the commencement of this Action, Plaintiffs have reviewed pleadings and court orders, regularly communicated with counsel regarding developments in the litigation, reviewed and approved responses to written discovery requests, facilitated the collection and timely production of responsive documents, and provided sworn declarations, including in support of this Motion.  Hawkins Decl. ¶¶ 6, 10, Einersen Decl. ¶¶ 6, 10.  Plaintiffs have also demonstrated their commitment to the Action by retaining highly qualified counsel.  As explained more fully in Point I.B, *infra*, Pomerantz and Cohen Milstein have extensive experience litigating securities class action lawsuits throughout the country, including this district.  Further, Plaintiffs have confirmed that they are each willing to serve as a representative party on behalf of the Class and understand their duties as a Class representative.  Hawkins Decl. ¶ 7-8, Einersen Decl. ¶ 7-8.  Plaintiffs will continue to work on behalf of the proposed Settlement Class by supervising any approved settlement.

### 5.    Common Issues Predominate Over Individual Ones

Class certification under Rule 23(b)(3) is warranted only if "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  Predominance tests if the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  It is not necessary that *all* questions are "susceptible to classwide proof," but, rather, only that common questions "*predominate*" over individual ones. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013).  This is so when common issues are "more prevalent or important than the . . . individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).  Thus, if "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages." *Id.*  As the Supreme Court has observed, this test is "readily met in certain

cases," including those alleging "securities fraud." *Amchem*, 521 U.S. at 625. Such is the case here.

Whether common questions predominate depends on the elements of the underlying cause of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Here, those elements are: (1) a material misrepresentation or omission; (2) scienter; (3) a connection to the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Id.* at 809-10. But it is widely recognized that nearly every element except reliance is subject to class-wide proof. *See, e.g.*, *In re Teva Sec. Litig.*, 2021 WL 872156, at *6 (D. Conn. Mar. 9, 2021) ("In most securities class actions, common questions of law and fact clearly predominate over individual ones for all the . . . elements other than reliance"); *see also, e.g.*, *In re Apple Inc. Sec. Litig.*, 2022 WL 354785, at *6 (N.D. Cal. Feb. 4, 2022) (similar); *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 52 (S.D.N.Y. 2012) (similar). Similarly, there are no individualized issues of reliance because Plaintiffs rely on the class-wide presumption of reliance established in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), based on the contention that the market for Danaher common stock was efficient at all relevant times (FAC ¶¶ 196-97), which Defendants do not oppose for purposes of Settlement. *See In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 834767, at *6 (S.D. Cal. Mar. 17, 2025) (reliance does not pose obstacle to class certification when Defendants "do not oppose" market efficiency for purposes of settlement). Finally, while damages may differ among class members, the proper amount of class-wide damages has been negotiated for purposes of Settlement. *Id.*

### 6.    A Class Action is Vastly Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[I]t is well-established that a class action is the superior method of adjudicating controversies involving large numbers of purchasers who have allegedly been injured by violations of the securities laws." *Baan I*, 2002 WL 32307825, at *7; *see also, e.g., see also, e.g., Cooper*, 254 F.R.D. at 641 ("District

courts have consistently recognized that . . . securities fraud cases are ideally suited for resolution by way of a class action."). The superiority requirement is designed to ensure that "resolution by class action will achieve economies of time, effort, and expense and promote uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable consequences." *Bunn*, 306 F.R.D. at 87. Rule 23(b)(3) identifies four relevant considerations:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). As in most every putative securities fraud class action, each of these factors weighs strongly in favor of a finding that a class action is superior to any other form of adjudication.

First, Class members' interest in individually controlling the prosecution of separate actions is limited. Because securities fraud inflicts harm across a large number of widely dispersed class members, it is widely recognized that the cost of pursuing individual actions for securities fraud is prohibitively expensive for most. *See, e.g.*, *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 623 F. Supp. 3d 470, 512 (E.D. Pa. 2022) ("complexity and costs" of individual securities fraud suits "outweigh the possible recoveries"); *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 85 (S.D.N.Y. 2018) ("cost of pursuing individual litigation" for securities fraud "is often not feasible"); *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1238 (D.N.M. 2012) ("costs of [individual] litigation would likely outweigh any benefit obtained"); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 393 (D. Mass. 2011) (cost of individual suits often "prohibitive when weighed against . . . individual recoveries"); *In re Novastar Fin. Sec. Litig.*, 2007 WL 465649, at *4 (W.D. Mo. Feb. 8, 2007) ("few class members would or could prosecute [claims] on an individual basis" given "the costs required for the litigation of a securities action"). Thus, a class action is the only practicable means to enforce investors' rights. *See Bunn*, 306 F.R.D. at 88

- 17 -

("Superiority is often found when the use of the class action device would enable vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."). Indeed, this is precisely the "evil that Rule 23 was designed to prevent." *Califano v. Yamasaki*, 442 U.S. 682, 690 (1979).

Second, lead counsel is not aware of any other securities fraud lawsuit brought by any member of the putative Class that relates to the allegations in the FAC. ECF No. 46-2 ¶ 12. The absence of other proceedings further confirms the limited interest of individual Class members in controlling the prosecution of separate actions. *See Howard I*, 322 F.R.D. at 141 (superiority supported by fact that "there is no other pending litigation that is substantially similar to this suit").

Third, concentrating litigation in this proceeding will avoid the waste of judicial resources and inconsistent outcomes. "[C]lass actions are appropriate vehicles for adjudicating securities fraud cases because they avoid the time and expense of requiring all class members to litigate individually." *Rougier v. Applied Optoelectronics, Inc.*, 2019 WL 6111303, at *19 (S.D. Tex. Nov. 13, 2019), *R&R adopted*, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019). In contrast, "[a]bsent a class action, courts could theoretically be inundated with hundreds of lawsuits presenting near-identical factual and legal issues." *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 218 (E.D. Pa. 2008), *aff'd*, 639 F.3d 623 (3d Cir. 2011). Thus, litigating each case separately would be "wasteful, result in delay and an inefficient expenditure of judicial resources," and "risk disparate results among those seeking redress." *In re SCOR Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 579 (S.D.N.Y. 2008); *accord In re Infineon Tech. AG Sec. Litig.*, 266 F.R.D. 386, 397 (N.D. Cal. 2009) (class action superior in securities fraud case when alternative is filing "thousands of identical complaints"). Accordingly, a class action is superior for handling thousands of claims nationwide where handling claims individually "obviously would waste judicial resources and result generally in great inefficiency." *In*

*re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 402 (D.D.C. 2002); *see also In re MF Glob. Holdings Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015) (class action superior in securities fraud lawsuit when alternative is "no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows").

Finally, the Court need not inquire for purposes of this Settlement-only Class whether the case, if tried, would present intractable management problems. *Amchem*, 521 U.S. at 620. After all, "the proposal is that there be no trial." *Id.*

### B.    Plaintiffs and their Counsel Adequately Represented the Class

Rule 23 specifies that any class certification order entered by the Court "must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). Rule 23(g) directs the Court to consider several factors, including:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). These factors all weigh in favor of appointing Plaintiffs' chosen counsel, Pomerantz and Cohen Milstein, as Class counsel and Class liaison counsel, respectively.

Pomerantz, with Cohen Milstein's assistance, has devoted substantial time and resources to diligently prosecuting this Action since its inception. D'Aloia Decl. ¶ 9. During the past two and a half years, Pomerantz has identified the claims, thoroughly investigated their legal and factual bases, drafted two complaints, successfully opposed Defendants' motion to dismiss, advanced the case through an initial stage of discovery, secured key evidence, submitted a motion for class certification, and more. *Id.* Based on the early successes in this case, Pomerantz and Cohen Milstein have secured the largest securities settlement in this Circuit. Pomerantz and Cohen Milstein were able to do so because they have decades of experience prosecuting class actions under the federal

securities laws throughout the country, including this district, and have served or are serving as lead counsel in some of the largest and most significant securities class actions brought to date. *See* Ex. 3 (Pomerantz firm resume); Ex. 6 (Cohen Milstein firm resume). Indeed, both regularly serve as class counsel in like matters. *E.g.*, *Palm Tran, Inc.-Amalgamated Transit Union Local 1577 Pension Plan v. Emergent Biosolutions Inc.*, 2021 WL 6072812, at *6 (D. Md. Dec. 23, 2021) (appointing Pomerantz as lead counsel and Cohen Milstein as liaison counsel because "[t]here is no question that the firms are qualified to serve in their respective positions"); *Kiken v. Lumber Liquidators Holdings, Inc.*, 2014 WL 12588686, at *5 (E.D. Va. May 14, 2014) (same because firms have "extensive experience in handling class actions similar to the present case, possess competent knowledge of the applicable law, and are likely to commit adequate resources to representing the class"). The outcomes achieved in this Action, and the quality of the submissions, are a testament to their expertise in this field. Accordingly, Plaintiffs respectfully request that the Court honor their choice and appoint Pomerantz as Class counsel and Cohen Milstein as Class liaison counsel.

## II.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL

A class action settlement can be approved only upon a finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Thus, the question at the preliminary approval stage is whether it is *likely* the Court will find the Settlement fair, reasonable, and adequate. *Gur-Ravantab*, 2024 WL 3443481, at *2. The decision to approve a class action settlement rests in the Court's discretion. *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 565 F. Supp. 2d 49, 54 (D.D.C. 2008). That discretion is, however, "constrained" by the strong judicial policy favoring the settlement of class actions. *Howard v. Liquidity Servs. Inc.*, 2018 WL 4853898, at *3 (D.D.C. Oct. 5, 2018) ("*Howard II*"); *accord Domestic Airline Travel*, 378 F. Supp. 3d at 16. Accordingly, "absent evidence of fraud or collusion, such settlements are not to be trifled with." *Howard II*, 2018 WL 4853898, at *3.

Rule 23(e)(2)—which governs final approval—was amended in 2018 to create uniformity

- 20 -

among federal courts on the primary considerations they must weigh to determine if a proposed class action settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e) advisory committee notes (2018 amendment).  As amended, Rule 23(e)(2) directs courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i)    the costs, risks, and delay of trial and appeal;
>>
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
>>
>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The first two factors focus on "procedural" concerns, whereas the final two focus on the "substantive" terms of the settlement. Fed. R. Civ. P. 23(e)(2), advisory committee notes (2018 amendments).  Because all factors are satisfied, final approval of the Settlement is "likely," and preliminary approval of the Settlement is warranted.  Fed. R. Civ. P. 23(e)(1)(B).

A.    **Plaintiffs and Lead Counsel Have Adequately Represented the Class**

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  This analysis is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g)," which govern class certification. 4 Rubenstein, *supra* p. 9, § 13:48.  Accordingly, these matters are addressed fully in Point I.A.4 and Point I.B, which substantiate that Plaintiffs and Lead Counsel have more than adequately represented the Class.

**B.      The Settlement Resulted from Informed Arm's-Length Negotiations**

Next, Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). In this District, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 104 (D.D.C. 2004) (citing Manual for Complex Litigation (Fourth) § 30.42 (1995)). Even so, "[f]ormal discovery is not necessarily required . . . for final approval of a proposed settlement" if the parties had "sufficient appreciation for the merits of the case." *Kinard v. E. Capitol Family Rental, L.P.*, 331 F.R.D. 206, 215 (D.D.C. 2019); *see also Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 56 (D.D.C. 2010) (similar). The Settlement here bears all the hallmarks of a non-collusive agreement that was the product of vigorous arm's length bargaining, undertaken in good faith with full knowledge of the case and its attendant risks.

The Settlement here followed extensive and hard-fought negotiations. The involvement of a mediator in settlement negotiations "bolsters the arm's length nature of the negotiations." *Dew v. Mindfinders, Inc.*, 2021 WL 4797551, at *5 (D.D.C. Oct. 14, 2021); *see also Gur-Ravantab*, 2024 WL 3443481, at *4 ("The involvement of a neutral mediator . . . indicates that the parties likely did engage in arm's length negotiations."). Here, settlement discussions were conducted before a highly experienced and well-regarded mediator, David Murphy of Philipps ADR. Further, the Settlement was reached only after 10 hours of intense negotiations and a mediator's recommendation, confirming that the negotiations were legitimate and non-collusive. *See Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 487 (D.D.C. Feb. 15, 2019) ("arm's length" nature of settlement demonstrated by fact that parties reached an agreement only after "nine hours of in-person mediation" before an "experienced" mediator); *In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 19 (D.D.C. 2015) (same when settlement was product of "13-hour session with the mediator"). The Parties then negotiated

- 22 -

the terms of the Stipulation over the course of the next month.  *See Little v. Wash. Metro. Area Transit Auth.*, 313 F. Supp. 3d 27, 37 (D.D.C. 2018) ("arms-length negotiations" found where "the parties continued to negotiate for weeks to determine the language of the Settlement Agreement" after reaching agreement in principle); *APA*, 311 F.R.D. at 19 (same when parties "spent an additional two months hammering out the details").

Further, by this time, the Parties were in a position to fully appreciate the strengths and weaknesses of their claims and defenses.  Before filing the FAC, Plaintiffs completed an extensive investigation which included, among other things, interviews with former employees and expert consultation.  By the time they entered the Settlement, the Parties were informed by an initial stage of meaningful discovery, during which they completed the production of documents related to class certification and made substantial progress to facilitate discovery on merits issues, as well as Plaintiffs' class certification motion and the materials submitted in support, including expert testimony.  *See In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *1 (D.D.C. Oct. 23, 1998) ("*Newbridge II*") ("sufficient attention has been given to the merits" when counsel reviewed more than 42,000 pages of documents and consulted with damages experts).  Ahead of the mediation, the Parties also exchanged confidential mediation statements and replies thereto thoroughly examining issues of liability and damages, along with supporting evidence, which were vetted further during the mediation.  *See APA*, 311 F.R.D. at 19 (exchange of mediation statements and confidential evidence during mediation supports conclusion that parties were well-informed).

Notably, the Settlement was also the product of heavy negotiation between sophisticated class action counsel.  The "sophistication and experience of counsel" can "support the arm's-length nature of the negotiations." *Howard II*, 2018 WL 4853898, at *4.  Plaintiffs and Defendants are both represented by some of the most skilled class action attorneys in the country, all of whom specialize

in litigating claims under the federal securities laws. Their independent judgement that the Settlement is a fair and advantageous result provides further evidence of its *bona fides*.

On these facts, there is simply "no evidence of collusion or coercion on the part of the parties," and no reason to "doubt that the settlement was the product of legitimate negotiation on behalf of both sides." *Howard II*, 2018 WL 4853898, at *4. Thus, this factor weighs in favor of approval, and the Settlement is entitled to a presumption that it is fair, reasonable, and adequate. *Id.*

**C.      The Relief Provided to the Class by the Settlement Is More than Adequate**

Under Rule 23(e)(2)(C), the Court must consider whether "the relief provided for the class is adequate," taking into account four factors enumerated therein. Fed. R. Civ. P. 23(e)(2)(C). What constitutes an "adequate" settlement is not susceptible to a mathematical formula. Because "[s]ettlement is the offspring of compromise[,] the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). As explained below, all four factors in Rule 23(e)(2)(C) demonstrate that the Settlement provides an excellent outcome for the Class.

**<u>Cost, Risks, and Delay of Continued Litigation</u>**. Rule 23(e)(2)(C)(i) requires the Court to weigh the recovery provided by the Settlement against "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). In doing so, the "benefits to the class must be considered in juxtaposition with the risks attendant to continued litigation of [the] matter." *In re LivingSocial Marketing & Sales Practice Litig.*, 298 F.R.D. 1, 12 (D.D.C. 2013). That is, "liability cannot be assumed when evaluating a proposed settlement" but, rather, "balanced against the *likelihood* of obtaining a . . . recovery at trial." *Radosti*, 717 F. Supp. 2d at 58-59 (emphasis added); *see also Ceccone v. Equifax Info. Servs. LLC*, 2016 WL 5107202, at *10 (D.D.C. Aug. 29, 2016) (weighing guaranteed recovery against the "potential difficulties and uncertainties [that would] reduce the plaintiffs' expected recovery if the case had proceeded to trial"). While this case has real strengths,

- 24 -

there are significant risks to securing *any*, much less a full, recovery.

To begin, the ability to secure any meaningful recovery in this Action depended in no small part on obtaining certification of a liability class. Defendants negotiated a schedule that provided deadlines for depositions and expert reports ahead of their response to Plaintiffs' class certification motion so they could mount a robust opposition, and several such depositions were scheduled at the time the Parties entered the Settlement. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y 2019) ("[a]lthough the risk of maintaining a class through trial is present in every class action" settlement approval is supported if "it is likely that defendants would oppose class certification" if litigation continued). Further, even if Plaintiffs secured class certification, there is no guarantee certification would survive through trial, as Defendants retain the right to decertify or modify the class. Fed. R. Civ. P. 23(c)(1)(C). That Defendants could adduce new evidence during the course of discovery to seek such relief, or manageability issues could surface before trial, further weigh in favor of approving the Settlement. *See In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *11 (C.D. Cal. July 28, 2014) (risk that "subsequent facts adduced through discovery might have led to decertification . . . favors approval of the settlement" and collecting cases).

Similarly, Plaintiffs faced significant uncertainty establishing liability on the merits. Courts regularly recognize that prevailing in securities class actions is "notably difficult and notoriously uncertain." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013). Here, Plaintiffs would need to prove (not merely allege) falsity with respect to statements made over a nearly two-year period about present demand, which is an inherently fact-specific issue. *See Howard II*, 2018 WL 4853898, at *5 (need to prove that "statements about competition in the retail division" was recovery risk). In addition, a significant amount of key evidence is in the possession of third parties, *e.g.*, Danaher's customers, which poses its own set of challenges. *See Hester v. Vision Airlines, Inc.*,

2014 WL 3547643, at *12 (D. Nev. July 17, 2014) (the "difficulty in obtaining documents from third-parties" is a "significant challenge[]"). While proving scienter is always difficult, the forward-looking statement sustained by the Court was subject to mental state imposed by the PSLRA safe harbor even *more* demanding than scienter. ECF No. 37 at 16. Aside from the "intrinsic difficulty" in proving these matters, they are "compounded by defendants' likely argument that their alleged misrepresentations were merely sanguine" and "insufficiently reckless to give rise to liability." *Newbridge II*, 1998 WL 765724, at *1. Further, cases of this type present "complex and disputed questions concerning loss causation and damages," *In re Baan Co. Sec. Litig.*, 284 F. Supp. 2d 62, 64 (D.D.C. 2003), which the Parties planned to address with expert testimony. Because Plaintiffs bear the burden of proof, Defendants could win at summary judgment or trial on these issues through a well-placed *Daubert* motion. Even if the case proceeded to trial, these matters could only be resolved through an inherently unpredictable "battle of the experts." *In re Fed. Nat'l Mortg. Ass'n Sec. Derivative & ERISA Litig.*, 4 F. Supp. 3d 94, 105 (D.D.C. 2013) ("*Fannie Mae II*").

Moreover, the Settlement spares the Settlement Class the substantial cost and delay associated with further litigation. It is well-accepted that "securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *7 (S.D. Cal. July 24, 2020); *see also In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("[S]ecurities class actions are generally complex and expensive to prosecute."). Indeed, it is not uncommon for a securities class action to take up to a decade to proceed from filing to trial. Here, Defendants vigorously contested nearly every stage of litigation, including discovery practice, and made clear they would continue to do so at every opportunity, such as class certification, summary judgment, trial, and beyond, if necessary. Indeed, if Plaintiff prevailed at trial, "a likely appeal of any successful trial verdict for plaintiffs would [delay] final

- 26 -

resolution of the case." *Fannie Mae II*, 4 F. Supp. 3d at 105.  The sheer duration of time it takes to bring these matters to fruition presents its own risk:  several seemingly secure jury verdicts have been reversed or overturned due to intervening changes in the law.  *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414, 433 (7th Cir. 2015) (reversing and remanding securities class action jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of intervening Supreme Court case); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011) (Supreme Court decision after entry of a verdict in plaintiffs' favor reduced billion-dollar award to $78 million).

In contrast, the Settlement guarantees the Class $172.5 million in cash.  If approved, this will be the *largest* federal securities fraud class action recovery in this Circuit since the enactment of the PSLRA, eclipsing the previous record by almost $20 million.  *See Fannie Mae II*, 4 F. Supp. 3d at 103 ($153 million settlement was "the largest securities class action settlement in our Circuit since the PSLRA went into effect in 1996").  This "remarkable statistic in itself tends to indicate the favorability of this recovery for plaintiffs." *Id.*  To be sure, the Settlement Amount is *ten times* larger than the median securities settlement in 2025 ($17.3 million).  Ex. 4 at 3; Ex. 5 at 23.

Of course, the recovery must be viewed in the context of potential damages.  Plaintiffs' expert estimates that, if Plaintiffs successfully established that *every* corrective disclosure was related to the fraud, maximum damages total $5.2 billion to $7.3 billion.  D'Aloia Decl. ¶ 10. However, Plaintiffs faced practical challenges to making that showing for several of the corrective disclosures.  *Id.*  The remaining corrective disclosures, for which there was a viable probability of recovery, yield maximum damages range of $2.4 billion to $5.7 billion.  *Id.*  The Settlement Amount therefore represents a recovery between 3.0% and 7.1% of the maximum recoverable damages.

This relief more than adequately accounts for the not insubstantial risk of securing no

recovery at all after years of protracted and expensive litigation.  Indeed, because of the risks, cost, and delay of successfully litigating such cases through trial and appeal, courts regularly approve settlements that provide similar recovery in like cases.  *See Fannie Mae II*, 4 F. Supp. 3d at 103-04 (recovery of 4-8% in case with $2-4 billion in damages); *see also, e.g.*, *Bhangal v. Hawaiian Elec. Indus., Inc.*, 2026 WL 587164, at *5-6 (N.D. Cal. Mar. 3, 2026) (2.8% recovery in case with $1.7 billion damages); *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 483 (S.D.N.Y. 2009) (2% recovery in case with $32 billion in damages); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (3-7% recovery in case with $1.7-4.1 billion in damages); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153007, at *6 (C.D. Cal. Sept. 12, 2005) (2.7% recovery in case with $5.5 billion in damages).  Indeed, the recovery here compares favorably with empirical data.  Cornerstone Research, which conducts semiannual analysis of securities settlements, reported that the median recovery in cases with damages of more than $1 billion was 3% in 2025.  *See* Ex. 4 fig. 8.  Similarly, NERA, another body that collects such data, reported that, between 2016 and 2025, the median recovery in cases with damages of $1-5 billion was 1.3%, and the median recovery in cases with damages of $5-10 billion was 0.7%.  *See* Ex. 5 fig. 23.  In short, the immediate, record-setting relief provided by the Settlement is well within the range of reasonableness.

**Effectiveness of Proposed Method for Distributing Relief**.  Rule 23(e)(2)(C)(ii) calls for the court to weigh potential relief against "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  Fed. R. Civ. P. 23(e)(2)(C)(ii).  This requires the court to "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims" without being "unduly demanding."  Fed. R. Civ. P. 23(e) advisory committee notes (2018 amendments).  Here, the method for processing claims and distributing relief to eligible Claimants is well-established and effective.

As summarized above, Claimants will be required to submit records establishing all relevant transactions in Danaher common stock within 90 days of the distribution of the Summary Notice. Stipulation ¶ 6.4, Ex. A ¶ 12. This is necessary insofar as neither Plaintiffs nor Defendants possess the trading data necessary for a claims-free process. Claims submitted with insufficient supporting documents or that otherwise do not meet the requirements for participation in the Settlement will be rejected but such Claimants will receive notice of the decision and have an opportunity to correct any curable defects or request Court review. Stipulation ¶ 6.5. In addition, Settlement proceeds will be equitably distributed to Class Members in accordance with the Plan of Allocation discussed more fully in Point II.D by check. These procedures efficiently facilitate the prompt distribution of Settlement proceeds only to those who have a legitimate right thereto and, as such, "are regularly held to be 'effective' in securities class actions." *ImmunityBio*, 2025 WL 834767, at \*10; *see also, e.g.*, *In re N. Dynasty Minerals Ltd. Sec. Litig.*, 2023 WL 5511513, at \*8 (E.D.N.Y. Aug. 24, 2023) (similar procedures "impose[] a minimal burden on claimants and will adequately filter out unjustified claims"); *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs, Inc.*, 2023 WL 1454371, at \*11 (M.D. Pa. Feb. 1, 2023) (similar procedures are "consistent with standard practice in securities class actions"); *Signet Jewelers*, 2020 WL 4196468, at \*13 (similar procedures are "well-established, effective methods that have been widely used in securities class-action litigation").

**Proposed Award of Attorneys' Fees**. Rule 23(e)(2)(C)(iii) requires the Court to account for "the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). The Notice informs Class Members that, as compensation for services rendered on a contingent basis, Lead Counsel will seek an award of attorneys' fee in an amount not to exceed 33 ⅓% of the Settlement Fund. *See* Stipulation Ex. A-1 at 3, 10. However, the Stipulation makes clear that the fee award is a matter committed to the discretion of the Court and the Settlement is not contingent on the amount

awarded by the Court, even if it may be less than that requested by Lead Counsel.  Stipulation ¶¶ 7.1, 7.4.  This too is consistent with standard practice and, thus, supports preliminary approval.

In this district, "fee awards that are one-third of the total recovery are generally considered reasonable."  *Gur-Ravantab*, 2024 WL 3443481, at *5; *see also, e.g.*, *In re Nifedipine Antitrust Litig.*, 2011 WL 13392312, at *2 (D.D.C. Jan. 31, 2011) (finding that "33-1/3% fee award is well within the applicable range of reasonable percentage fund awards"); *Bynum v. Dist. of Columbia*, 412 F. Supp. 2d 73, 85 (D.D.C. 2006) ("A 1/3 fee is within the range of what is customarily awarded in this District.").  Indeed, the same amount has been awarded in previous securities class actions and in other large class action settlements.  *See Freeland v. Iridium World Commc'ns, Ltd.*, No. 1:99-cv-1002, ECF Nos. 263-65 (D.D.C. Oct. 23, 2008) (awarding 33.33% fee on securities class action settlements totaling $43.1 million); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *14 (D.D.C. July 16, 2001) (awarding 34.06% on $359.4 million antitrust settlement).  Because the *maximum* potential fee is within the range considered to be reasonable it does not pose an obstacle to preliminary approval.  The fact that the Settlement is not contingent on any ruling with respect to attorneys' fees further supports preliminary approval.  *See Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 108 (D.D.C. June 27, 2013) (noting that the fee award is not a "condition of the settlement" which will "continue to bind the parties and class members" if it is denied).

**Rule 23(e) Agreements**.  Finally, the court must consider "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), that is, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).  The Parties have entered into a confidential Supplemental Agreement that establishes conditions under which Danaher may terminate the Settlement if those totaling a certain amount Danaher common stock "opt out" of the Settlement.  Stipulation ¶ 8.3.  This type of agreement is "common in securities fraud actions and does not weigh

against preliminary approval." *ImmunityBio*, 2025 WL 834767, at *12.  Its terms are confidential "to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts for themselves at the expense of other Settlement Class members." *Id.*; *see also, e.g.*, *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *7 (S.D.N.Y. Sept. 29, 2022) (opt-out agreements are "standard practice in securities fraud class action settlements" and their terms are confidential "to avoid creating incentives for a small group of investors to opt out solely to leverage the [termination] threshold to exact an individual settlement" at the expense of the class).

### D.        The Settlement Treats all Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  As set forth in the full Notice, the Net Settlement Fund will be allocated among qualifying Class Members in accordance with the terms of a proposed Plan of Allocation described therein.  *See* Stipulation Ex. A-1 ¶ 7.  The Plan of Allocation provides each Authorized Claimant with a *pro rata* share of the Net Settlement Fund based on his, her, or its qualifying losses, compared to those of other Authorized Claimants.  *Id.* App'x A.  Allocation plans that "apportion funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable." *Fannie Mae II*, 4 F. Supp. 3d at 109.  Thus, while "the settlement will not be distributed equally among the class," the "apportionment of relief among the class based on an individualized assessment of class members' claims still treats class members 'equitably relative to each other.'" *Randle v. SunTrust Bank, Inc.*, 2024 WL 706807, at *7 (D.D.C. Feb. 21, 2024) (quoting Fed. R. Civ. P. 23(e)(2)(D)); *see also, e.g.*, *Orrstown Fin.*, 2023 WL 1454371, at *12 (allocation plan in securities case that distributes funds to class members "on a pro rata basis determined by the relative size of their loss . . . treats Class Members equitably relative to each other"); *In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *8 (S.D. Cal. Dec. 18, 2019) (same when allocation formula "allocate[s] the settlement funds to class

members based on the extent of their injuries"); *Christine Asia Co. v. Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (same when plan of allocation provides claimants with "*pro rata* share of the Net Settlement Fund based on the amount of their Recognized Loss").

The Notice also advises that Plaintiffs may request an aggregate service award in an amount not to exceed $70,000—which, at most, represents 0.04% of the Settlement Amount—to compensate them for time spent pursuing the matter on behalf of the Class.  Stipulation Ex. A-1 at 3, 16.  Such awards are "common" in class action litigation, "especially when there is a common fund created to benefit the entire class."  *Little*, 313 F. Supp. 3d at 35.  They are meant to "compensate plaintiffs for the services they provided and the risks they incurred" on behalf of absent class members.  *Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 105 (D.D.C. 2013).  Further, courts have approved far greater service awards for similar work by representative parties.  *See, e.g.*, *Randle*, 2024 WL 706807, at *10 (approving award of $175,000 per plaintiff); *Kifafi*, 999 F. Supp. 2d at 105 (approving $50,000 award to named plaintiff); *Nifedipine*, 2011 WL 13392312, at *2 (approving service award of $60,000 per class representative); *Meijer, Inc. v. Barr Pharm., Inc.*, 2009 WL 10744520, at *5 (D.D.C. Apr. 20, 2009) (approving service award of $50,000 per class representative).  Thus, the proposed award is well within the realm of reasonableness for preliminary approval.  *See Jones v. Chopra*, 2023 WL 6037295, at *7 (D.D.C. Sept. 15, 2023) (proposed service payments of $50,000 per plaintiff "appears reasonable" for preliminary approval of settlement).

## III.    THE FORM AND CONTENT OF THE NOTICE PROGRAM ARE SOUND

For any class certified under Rule 23(b)(3), the court must "direct the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e) states that the Court must "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement.  Fed. R. Civ. P. 23(e)(1)(B).  Due process does not guarantee that every

identified class member must receive notice. *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992). It requires only that the method used is "reasonably calculated" to do so. *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Further, a notice will satisfy due process if it "fairly apprises the prospective members of the class of the proposed settlement and of the options that are open to them in connection with the proceedings." *Domestic Airline Travel*, 322 F. Supp. 3d at 68 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114-15 (2d Cir. 2005)). The proposed notice program satisfies all such requirements.

Consistent with Rules 23(c)(2)(B) and 23(e)(1)(B), the proposed Preliminary Approval Order directs the Claims Administrator to (i) email or mail a copy of the Summary Notice to all Class Members who can be identified through reasonable effort, including all those on the list of record owners provided by Danaher (a copy of which has already been provided); and (ii) use a proprietary database to mail a copy of the full Notice to all known brokers and nominees that purchase securities on behalf of beneficial owners. Stipulation Ex. A ¶ 9(a). In addition, a copy of the Summary Notice will be published in *The Wall Street Journal. Id.* ¶ 9(c). Both the Summary Notice and Notice direct Class Members to a dedicated Settlement website where they can download all Settlement-related documents, including the full Notice, and, if they choose, submit a Proof of Claim online. *Id.* ¶ 9(b). Courts routinely find that comparable notice procedures meet the requirements of Rule 23 and due process in securities cases. *See, e.g.*, *In re Alphabet, Inc. Sec. Litig.*, 2024 WL 4354988, at *4 (N.D. Cal. Sept. 30, 2024); *In re Envision Healthcare Corp. Sec. Litig.*, 2023 WL 8110157, at *3 (M.D. Tenn. Nov. 20, 2023); *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, 2023 WL 7180604, at *8 (N.D. Ala. Aug. 25, 2023); *Pearlstein*, 2022 WL 4554858, at *8-9; *Baker v. SeaWorld Ent., Inc.*, 2020 WL 818893, at *2-3 (S.D. Cal. Feb. 19, 2020); *In re BP p.l.c. Sec. Litig.*, 2016 WL 7668474, at *3 (S.D. Tex. Nov. 4, 2016). Indeed, nearly identical notice programs have

been approved in other class actions in this district.  *See Nat'l Veterans Legal Servs. Program v. United States*, 724 F. Supp. 3d 1, 14-15 (D.D.C. 2024) (approving notice sent by email and postcard that directed class members to a "dedicated settlement website" for additional information); *In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 29 (D.D.C. 2011) (similar).

As required by due process, Rule 23 specifies that a notice must state in plain language the nature of the action, the proposed class, the procedures for opting out, and the binding nature of any judgment.  *See* Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).  The PSLRA also requires that the notice (i) state the recovery; (ii) state if the parties disagree on damages; (iii) identify any anticipated motion for attorneys' fees and costs; (iv) include contact information for plaintiffs' counsel; (v) describe the reasons for settlement; and (vii) include a cover page summarizing its content.  *See* 15 U.S.C. § 78u-4(a)(7).  The proposed Notice contains neutral and easy to understand language that satisfies each of these requirements, among additional matters, such as the date and time for the Settlement Fairness Hearing, how to object, and the terms of the proposed Plan of Allocation.  Stipulation Ex. A-1. Accordingly, the Notice provides all information required by applicable law and should be approved. *See Fannie Mae II*, 4 F. Supp. 3d at 101 (settlement notice that described "the essential terms of the Settlement Agreement, the Plan of Allocation, how to make a claim, how to object to the settlement, and the date, time, and location of the Fairness Hearing" provided "adequate" notice to class).

To carry out this notice program, Plaintiffs have selected Verita, to serve as the proposed Claims Administrator after completing a competitive bidding process.  As reflected in the resume attached as Exhibit 2, Verita is a nationally recognized settlement claims administrator that has extensive experience administering class action settlements, including some of the largest securities class action settlements since the enactment of the PSLRA.  As such, Plaintiffs respectfully request that the Court approve their selection of Verita as Claims Administrator.

## IV.    PROPOSED SCHEDULE OF EVENTS

To implement the Settlement, the Court must set deadlines and dates for certain Settlement-related events.  Plaintiffs respectfully propose the following schedule of events, as agreed by the Parties and set forth in the Preliminary Approval Order ("PAO"):

| Event | Deadline | Example Date |
|---|---|---|
| Mail/email Summary Notice, establish Settlement website, and mail Notice | 21 days after the entry of PAO ¶ 9(a)-(b)) (the "Notice Date") | May 27, 2026 |
| Publish Summary Notice in *The Wall Street Journal* and national newswire | 7 days after the Notice Date (PAO ¶ 9(c)) | June 3, 2026 |
| Submit a request for exclusion from the Class | 21 days before the Settlement Fairness Hearing (PAO ¶ 16) | July 24, 2026 |
| File papers in support of final approval of the Settlement, Plan of Allocation, or Fee and Expense Application | 21 days before the Settlement Fairness Hearing (PAO ¶ 24) | July 24, 2026 |
| File objections to final approval of the Settlement, Plan of Allocation, or Fee and Expense Application | 14 days before the Settlement Hearing (PAO ¶ 21) | July 31, 2026 |
| File reply papers in support of the Settlement, Plan of Allocation, or Fee and Expense Application | 7 days before the Settlement Fairness Hearing (PAO ¶ 24) | August 7, 2026 |
| File proof of compliance with PAO ¶ 9(a)-(c) | 7 days before the Settlement Fairness Hearing (PAO ¶ 9(d)) | August 7, 2026 |
| Deadline to file proof of CAFA Notice | 7 days before the Settlement Fairness Hearing (PAO ¶ 11) | August 7, 2026 |
| Settlement Fairness Hearing | 100 days after entry of PAO, or at the Court's earliest convenience | August 14, 2026 |
| Submit a Proof of Claim | 90 days after the Notice Date (PAO ¶ 12) | August 25, 2026 |

## CONCLUSION

For all the foregoing reasons, the Court should enter the proposed Preliminary Approval Order submitted as Exhibit A to the Stipulation, which will (i) preliminarily approve the Settlement, (ii) preliminarily certify the Class and appoint Plaintiffs as Class representative, Pomerantz as Class counsel, and Cohen Milstein as Class liaison counsel, (iii) approve the form and content of providing notice of the Settlement to the Class, and (iv) set various deadlines and dates for purposes of the Settlement, including a date for the Settlement Fairness Hearing.

Dated: April 22, 2026

Respectfully submitted,

 /s/ Justin D. D'Aloia
Jeremy A. Lieberman (*pro hac vice*)
Justin D. D'Aloia (*pro hac vice*)
**POMERANTZ LLP**
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
jdaloia@pomlaw.com

*Counsel for Plaintiffs and Lead Counsel for the Proposed Class*

Daniel S. Sommers (Bar No. 416549)
Jan E. Messerschmidt (Bar No. 1031488)
**COHEN    MILSTEIN    SELLERS    &    TOLL PLLC**
1100 New York Ave., NW
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
dsommers@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

*Counsel for Plaintiffs and Liaison Counsel for the Proposed Class*

Brian Schall
Rina Restaino
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Tel: (424) 303-1964
Fax: (213) 519-5876
brian@schallfirm.com
rina@schallfirm.com

*Additional Counsel for Plaintiff Derek Einersen*

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5.3, I hereby certify that, on this 22nd day of April, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

 */s/ Justin D. D'Aloia*
Justin D. D'Aloia