**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRENDA HAWKINS, and DEREK EINERSEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DANAHER CORPORATION, RAINER M. BLAIR, MATT MCGREW, and EMMANUEL LIGNER,<br><br>Defendants. | Case No. 1:23-cv-02055 (AHA) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCAITON**

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ....1

BACKGROUND ....2

A. Relevant Procedural History ....2

1. Substantive Proceedings ....2

2. Settlement Negotiations and Finalization ....5

3. Preliminary Approval of the Settlement ....6

B. The Settlement ....7

1. Key Terms of the Settlement ....7

2. Notice to the Class and Response to Date ....8

STANDARD OF REVIEW ....9

ARGUMENT ....10

I. CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ....10

A. The Requirements of Rule 23 Are Satisfied ....10

B. The Court Should Appoint Pomerantz as Class Counsel and Cohen Milstein as Class Liaison Counsel ....11

II. THE SETTLEMENT IS HIGHLY DESERVING OF FINAL APPROVAL ....12

A. The Settlement Satisfies the Requirements of Rule 23(e)(2) ....14

1. Plaintiffs and Lead Counsel Have Adequately Represented the Class ....14

2. The Settlement Resulted from Informed Arm's-Length Negotiations ....16

3. The Relief Provided to the Class by the Settlement Is Substantial ....18

4. The Settlement Treats all Class Members Equitably ....25

B. The Remaining D.C. Circuit Factors Support Approval ....27

1. The Positive Reaction of the Settlement Class ....27

2. The Opinion of Experienced Counsel ......................................................28

III. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ..................................28

CONCLUSION ..........................................................................................................30

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Alvarez v. Keystone Plus Constr. Corp.*,
303 F.R.D. 152 (D.D.C. 2014) ..... 28

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014) ..... 20

*Am. Security Vanlines, Inc. v. Gallagher*,
782 F.2d 1056 (D.C. Cir. 1986) ..... 9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ..... 9, 10

*In re Ampicillin Antitrust Litig.*,
81 F.R.D. 395 (D.D.C. 1978) ..... 28

*Anwar v. Fairfield Greenwich Ltd. Grp.*,
2015 WL 14085135 (S.D.N.Y. Nov. 15, 2015), 2016 WL 11801286
(S.D.N.Y. May 6, 2016) ..... 24

*In re APA Assessment Fee Litig.*,
311 F.R.D. 8 (D.D.C. 2015) ..... 9, 18

*In re Baan Co. Sec. Litig.*,
284 F. Supp. 2d 62 (D.D.C. 2003) ..... 21, 28

*Baker v. SeaWorld Ent., Inc.*,
2020 WL 4260712 (S.D. Cal. July 24, 2020) ..... 21

*Bernstein v. Ginkgo Bioworks Holdings, Inc.*,
2024 WL 5112227 (N.D. Cal. Dec. 13, 2024) ..... 30

*In re BofI Holdings, Inc. Sec. Litig.*,
2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ..... 27

*In re Broadcom Corp. Sec. Litig.*,
2005 WL 8153007 (C.D. Cal. Sept. 12, 2005) ..... 23

*Bynum v. Dist. of Columbia*,
412 F. Supp. 2d 73 (D.D.C. 2006) ..... 27

*Ceccone v. Equifax Info. Servs. LLC*,
2016 WL 5107202 (D.D.C. Aug. 29, 2016) ..... 19

*Christine Asia Co. v. Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..... 26

*City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*,
2019 WL 1529517 (W.D. Ark. Apr. 8, 2019)....25

*In re Datatec Sys., Inc. Sec. Litig.*,
2007 WL 4225828 (D.N.J. Nov. 28, 2007) ....30

*Dew v. Mindfinders, Inc.*,
2021 WL 4797551 (D.D.C. Oct. 14, 2021) ....17

*In re Domestic Airline Travel Antitrust Litig.*,
378 F. Supp. 3d 10 (D.D.C. 2019)....9, 12, 16

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc. IPO Class Action Settlement*, 822 F. App'x 40 (2d Cir. 2020)....20

*In re Fed. Nat'l Mortg. Ass'n Sec. Derivative & ERISA Litig.*,
4 F. Supp. 3d 94 (D.D.C. 2013)....21, 22, 23, 29

*Freeport Partners, L.L.C. v. Allbritton*,
2006 WL 627140 (D.D.C. Mar. 13, 2006)....14, 27

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ....22

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y 2019)....19

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....19

**Howard v. Liquidity Servs. Inc.*,
2018 WL 4853898 (D.D.C. Oct. 5, 2018) .... *passim*

*Howard v. SEC*,
376 F.3d 1136 (D.C. Cir. 2004)....20

*In re Illumina, Inc. Sec. Litig.*,
2019 WL 6894075 (S.D. Cal. Dec. 18, 2019)....26

**In re ImmunityBio, Inc. Sec. Litig.*,
2025 WL 1686263 (S.D. Cal. June 16, 2025)....11, 17, 24, 25

*In re IPO Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)....23

*Kifafi v. Hilton Hotels Ret. Plan*,
999 F. Supp. 2d 88 (D.D.C. 2013)....26

*Kiken v. Lumber Liquidators Holdings, Inc.*,
2014 WL 12588686 (E.D. Va. May 14, 2014) ....................15

*Kinard v. E. Capital Family Rental, L.P.*,
331 F.R.D. 206 (D.D.C. 2019)....................27

*Little v. Wash. Metro. Area Transit Auth.*,
313 F. Supp. 3d 27 (D.D.C. 2018)....................17, 26

*In re LivingSocial Marketing & Sales Practice Litig.*,
298 F.R.D. 1 (D.D.C. 2013)....................19

*In re Lorazepam & Clorazepate Antitrust Litig.*,
2003 WL 22037741 (D.D.C. June 16, 2003)....................28, 29

*Mayfield v. Barr*,
985 F.2d 1090 (D.C. Cir. 1993)....................9

*Meijer, Inc. v. Warner Chilcott Holdings Co. III*,
565 F. Supp. 2d 49 (D.D.C. 2008)....................12

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007)....................23

*In re MGM Mirage Sec. Litig.*,
708 F. App'x 894 (9th Cir. 2017)....................30

*Nat'l Veterans Servs. Program v. United States*,
170 F.4th 1353 (Fed. Cir. 2026)....................26

*In re Newbridge Networks Sec. Litig.*,
1998 WL 765724 (D.D.C. Oct. 23, 1998)....................18, 27

*In re N. Dynasty Minerals Ltd. Sec. Litig.*,
2023 WL 5511513 (E.D.N.Y. Aug. 24, 2023)....................24

*Palm Tran, Inc.-Amalgamated Transit Union Local 1577 Pension Plan v. Emergent Biosolutions Inc.*,
2021 WL 6072812 (D. Md. Dec. 23, 2021)....................15

*Pearlstein v. BlackBerry Ltd.*,
2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)....................25

*In re Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y. 2016)....................15

*Prince v. Aramark Corp.*,
257 F. Supp. 3d 20 (D.D.C. 2017)....................11

*Radosti v. Envision EMI, LLC*,
717 F. Supp. 2d 37 (D.D.C. 2010) ........................................................................17, 19

*Randle v. SunTrust Bank, Inc.*,
2024 WL 706807 (D.D.C. Feb. 21, 2024) ..........................................................................26

*Richardson v. L'Oreal USA, Inc.*,
951 F. Supp. 2d 104 (D.D.C. 2013) ...................................................................................25

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
571 F. Supp. 2d 1315 (N.D. Ga. 2007) ..............................................................................14

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..........................................................21, 24, 25

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs, Inc.*,
2023 WL 1454371 (M.D. Pa. Feb. 1, 2023) ...................................................................24, 26

*In re Stable Rd. Acquisition Corp. Sec. Litig.*,
2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .....................................................................25

*Stephens v. Farmers Rest. Grp.*,
2019 WL 2550674 (D.D.C. June 20, 2019) ...................................................................13, 17

*Stephens v. US Airways Grp., Inc.*,
102 F. Supp. 3d 222 (D.D.C. 2015) ....................................................................................30

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011).................................................................................................30

*Thomas v. Albright*,
139 F.3d 227 (D.C. Cir. 1998) .............................................................................................19

*In re Veneman*,
309 F.3d 789 (D.C. Cir. 2002) .............................................................................................10

*In re Vitamins Antitrust Litig.*,
2001 WL 34312839 (D.D.C. July 16, 2001).......................................................................24

*In re Vitamins Antitrust Litig.*,
305 F. Supp. 2d 100 (D.D.C. 2004) ..............................................................................16, 27

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011)..................................................................................22

*In re Wireless Facilities, Inc. Sec. Litig. II*,
253 F.R.D. 607 (S.D. Cal. 2008) .........................................................................................15

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii) ....................14

Private Securities Litigation Reform Act of 1995 ....................3, 20, 22

**Rules**

*Fed. R. Civ. P. 23 .................... *passim*

**Other Authorities**

4 Newberg and Rubenstein on Class Actions § 13:48 (6th ed. 2022) ....................14

Lead plaintiff Brenda Hawkins ("Lead Plaintiff") and plaintiff Derek Einersen (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, respectfully submit this memorandum of points and authorities in support of their motion for final approval of class action settlement and plan of allocation (the "Motion").[1]

## PRELIMINARY STATEMENT

On April 20, 2026, the Parties agreed to settle this complex and hard-fought class action for $172.5 million in cash on the terms set forth in the Stipulation following arm's-length negotiations before experienced mediator David Murphy, Esq. On June 1, 2026, the Court entered an Order in which it granted preliminary approval of the Settlement, provisionally certified a Class for purposes of the Settlement, approved the form and manner of providing notice to potential Class Members, and set various deadlines for the filing of any papers in support of, or opposition to, final approval of the proposal in advance of a Settlement Fairness Hearing scheduled for September 3, 2026. Having completed the notice program approved by the Court, Plaintiffs now seek final approval of the Settlement and the Plan of Allocation for distributing the net proceeds to Class Members.

The Settlement represents an outstanding result for the Class and easily satisfies the factors that guide class action settlement approval. If approved, it will be the single largest private securities recovery in the history of this Circuit. In addition, the Settlement provides an immediate and substantial recovery for the Class and eliminates the costs, risks, and delay of continued proceedings, including the risk that Defendants could prevail at class certification, and the Settlement Class could receive far less, or nothing at all, after summary judgment, trial, or appeal. Plaintiffs and Plaintiffs' Counsel were fully informed about these strengths and weaknesses at the time they entered the

---

[1] All capitalized terms not otherwise defined herein have the meaning set forth in the Stipulation of Settlement, dated April 20, 2026 (ECF No. 51-3) (the "Stipulation") or the accompanying Declaration of Justin D. D'Aloia ("D'Aloia Declaration"). Citations to "Ex." refer to the exhibits attached to the D'Aloia Declaration. All citations and internal quotations are omitted unless otherwise noted.

Stipulation and respectfully submit that the Settlement is fair, reasonable, and adequate in all respects.

In addition, the Plan of Allocation that will be used to distribute the net proceeds of the Settlement to Class Members is fair and reasonable. The Plan, which was developed with input from Plaintiffs' damages expert, treats Settlement Class members equitably and ensures that each receives a *pro rata* share of the proceeds based on the extent of their economic loss due to the alleged fraud.

Plaintiffs followed the Court-approved notice plan and sent Notice of the proposed Settlement to over 730,000 potential Class Members to solicit claims, requests for exclusion, and any objections to the proposed Settlement. As of this Motion, there have not been ***any*** objections to the Settlement or ***any*** valid requests for exclusion received from potential Class Members. As such, the Settlement and the Plan of Allocation appear to enjoy unanimous support from Class Members.

Accordingly, Plaintiffs respectfully request that the Court fully and finally approve the proposed Settlement and Plan of Allocation, certify the Class for purposes of the Settlement, and enter the Judgment attached as Exhibit B to the Stipulation.

## BACKGROUND

### A. Relevant Procedural History

#### 1. Substantive Proceedings

Brenda Hawkins commenced this Action on July 17, 2023. ECF No. 1. In an Order dated October 16, 2023, the Court appointed Brenda Hawkins as Lead Plaintiff and approved her selection of Pomerantz LLP ("Pomerantz") as Lead Counsel and Cohen Milstein Sellers & Toll LLP ("Cohen Milstein") as Liaison Counsel. ECF No. 22.

On December 29, 2023, Brenda Hawkins and additional plaintiff Derek Einersen filed the operative First Amended Complaint ("FAC") (ECF No. 24) following an extensive investigation by Plaintiffs' Counsel that involved, among other things, review and analysis of regulatory filings made

with the U.S. Securities and Exchange Commission ("SEC"), securities analyst reports, press releases, and news reports, as well as interviews with former employees and consultation with experts. D'Aloia Decl. ¶¶ 17-23. The FAC asserted claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder on behalf of a class of all persons and entities who purchased or otherwise acquired Danaher securities between January 27, 2022, and October 23, 2023, both dates inclusive (the "Class Period") for public statements they made during that time concerning the performance of the business unit that sold equipment used to manufacture biopharmaceutical vaccines and therapeutics, known as the "bioprocessing business." FAC ¶¶ 1, 5-6. The FAC further alleged that the price of Danaher's common stock was artificially inflated as a result of Defendants' allegedly false or misleading statements and declined in response to five partial disclosures between October 20, 2022, and October 24, 2023, harming investors like Plaintiffs who purchased securities at inflated prices before the truth was known. *Id.* ¶¶ 196-99.

On February 27, 2024, Defendants filed a motion to dismiss (the "Motion to Dismiss") for failure to state a claim under Rule 9(b) and the heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). ECF Nos. 28-30. Plaintiffs filed comprehensive opposition papers in response to the Motion to Dismiss on April 29, 2024 (ECF Nos. 32, 33), and Defendants filed reply papers on June 13, 2024 (ECF Nos. 34, 35).

On August 4, 2025, the Court entered a Memorandum Opinion and Order granting in part and denying in part Defendants' Motion to Dismiss. ECF No. 37. Although the Court granted the Motion with respect to certain forward-looking statements and several statements that qualified as immaterial puffery, it denied the Motion to Dismiss with respect to statements of present fact from nearly every disclosure challenged in the FAC. *Id.* at 9-13. The Court also held that forecasts made on the investor call held on April 21, 2022, were not protected by the PSLRA safe harbor for

forward-looking statements and, further, adequately alleged to be knowingly false. *Id.* at 18.

As agreed between the Parties and ordered by the Court, Defendants filed an answer to the FAC on October 2, 2025, in which they denied, in whole or part, a significant amount of the FAC's allegations and raised a number of defenses. ECF Nos. 38, 43.

Between August 5, 2025, and September 3, 2025, counsel for the Parties held a series of conferences to discuss the matters required by Rule 26(f) and Rule 16.3 of the Local Civil Rules, including a proposed case schedule, and submitted a Joint Case Management Report on September 3, 2025. D'Aloia Decl. ¶ 31. Counsel for the Parties appeared for an in-person scheduling conference before the Court on October 16, 2025, during which the Court endorsed the Parties' proposal to conduct merits discovery in tandem with class certification discovery. *Id.* ¶ 38. The following day, the Court entered a Scheduling Order setting case deadlines through the end of discovery including deadlines related to class certification. ECF No. 44.

To facilitate the swift commencement of discovery, ahead of the entry of any scheduling order, the Parties negotiated and submitted a stipulated protective order and a stipulated protocol for the collection and production of electronic discovery. ECF Nos. 40, 42. On September 16, 2025, the Court entered the protective order negotiated by the Parties (ECF No. 41) (the "Protective Order").

Following the entry of the Protective Order, the Parties engaged in robust and hard-fought discovery. The Parties exchanged initial disclosures on September 24, 2025. *Id.* ¶ 34. To resolve various objections raised by Defendants, Plaintiffs served amended disclosures the day before the scheduling conference. *Id.* In October, Plaintiffs served an extensive set of more than 50 requests for production covering class-related and merits issues as well as an initial set of written interrogatories. *Id.* ¶ 41. Between December and January, Plaintiffs served two separate sets of requests for admission focused on key issues. *Id.* ¶¶ 47-48. Likewise, Defendants served an

extensive set of requests for production and written interrogatories, in response to which Plaintiffs provided detailed responses. *Id.* ¶¶ 42, 44, 46. Due to the range of information sought by the Parties, and the limitations imposed by their responses, counsel for the Parties frequently conferred by email, phone, and letter to address disagreements regarding the scope of discovery, through which the Parties provided piecemeal revisions to their written responses, agreed to provide additional information in response to the discovery requests, or otherwise justify their stated positions. *Id.* ¶¶ 49-60. Counsel for the Parties also negotiated search terms for electronic discovery. *Id.* ¶¶ 57-58.

While continuing to aggressively pursue and defend various discovery issues, on February 27, 2026, Plaintiffs filed a comprehensive motion for class certification along with supporting papers, including an expert report from Dr. Zachary Nye. ECF No. 46. The motion sought to certify a class consisting of all persons and entities who purchased or otherwise acquired Danaher common stock during the Class Period and were damaged thereby, except various affiliates of Defendants. *Id.*

By this time, the Parties substantially completed the production of documents related to class certification and turned their attention to completing remaining discovery. *Id.* ¶ 65. Defendants issued notices to depose Plaintiffs and Dr. Nye. *Id.* ¶ 69. Plaintiffs made arrangements to hold these depositions in California, Missouri, and Texas, and the Court approved a modest extension to the case schedule to accommodate their availability. Plaintiffs also received voluminous productions of non-public documents from Defendants. In total, Plaintiffs received and reviewed hundreds of thousands of pages of such documents. *Id.* ¶ 65. Plaintiffs also provided notice to Defendants of their intent to hold a Rule 30(b)(6) deposition of Danaher on a range of topics, and otherwise began to prepare for other depositions. *Id.* ¶ 71.

**2. Settlement Negotiations and Finalization**

As required by Rule 26(f), counsel for the Parties discussed the potential for an early resolution following the entry of the Order on Defendants' Motion to Dismiss but agreed at that time

that it was too early to meaningfully engage and that discovery could potentially facilitate discussions. D'Aloia Decl. ¶ 30.

After completing an initial phase of discovery that gave both sides a better understanding of the case, the Parties agreed to mediate before David Murphy of Phillips ADR, a mediator with extensive experience in complex commercial litigation in federal court, including securities class actions. *Id.* ¶ 76. In advance of the mediation, the Parties exchanged detailed opening and reply mediation statements outlining their positions on topics such as liability and damages, together with supporting evidence developed in discovery. *Id.* ¶¶ 77-78.

On March 23, 2026, the Parties attended an all-day, in-person mediation. *Id.* ¶ 79. After a full day of negotiations facilitated by the mediator, David Murphy issued a mediator's recommendation to resolve the Action for $172.5 million in cash, subject to the negotiation of the terms of a stipulation of settlement and approval by the Court, which the Parties accepted. *Id.* Following subsequent negotiations, counsel for the Parties memorialized the key terms of their agreement in a Confidential Term Sheet, executed on March 26, 2026. *Id.* ¶ 80. On March 31, 2026, Plaintiffs filed a notice of settlement with the Court. ECF No. 49.

The Settlement ultimately entered into by the Parties was the product of three weeks of continued negotiation. Between March 26, 2026, and April 20, 2026, counsel for the Parties negotiated all terms and conditions of the Settlement in the Stipulation and its corresponding Exhibits (D'Aloia Decl. ¶¶ 80-81 ), which they executed on April 20, 2026. ECF No. 51-3.

### 3. Preliminary Approval of the Settlement

On April 22, 2026, Plaintiffs filed an unopposed motion for preliminary approval of the proposed Settlement, together with supporting papers, including a fully executed copy of the Stipulation and all exhibits thereto (ECF No. 51) ("Preliminary Approval Motion"), in which they sought authorization to provide notice of the proposed Settlement to potential Class Members.

On June 1, 2026, the Court entered an order granting the Preliminary Approval Motion (ECF No. 55) (the "Preliminary Approval Order"). In the Preliminary Approval Order, the Court preliminarily found that it would likely be able to approve the Settlement and certify the Class for purposes of the Settlement, authorized the form and manner of providing notice of the Settlement to potential Class Members, approved the appointment of Verita Global, LLC ("Verita") as Claims Administrator, and scheduled the Settlement Fairness Hearing and other deadlines associated with the Settlement. *See* ECF No. 55.

**B. The Settlement**

**1. Key Terms of the Settlement**

This Settlement provides for the payment of $172,500,000 into an interest-bearing escrow account for the benefit of the Class known as the "Settlement Fund." Stip. ¶¶ 1.43, 2.1. Following the entry of the Preliminary Approval Order, the Settlement Amount was paid into an interest-bearing Settlement Fund. D'Aloia Decl. ¶ 84. Notably, this is not a claims-made Settlement; no portion of the Settlement Fund will revert to Defendants or their representatives. Stip. ¶ 2.3. After Taxes and Tax Expenses, Notice and Claims Administration Expenses, any Fee and Expense Award, and any other Court-approved deductions have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, will be distributed to Authorized Claimants pursuant to the proposed Plan of Allocation. *Id.* ¶¶ 6.3, 6.8.

Any Class Member who wishes to receive a distribution from the Net Settlement Fund must establish that they are entitled to a share of the proceeds by submitting a Proof of Claim (Stipulation Ex. A-2) supported by such documents described therein. Stip. ¶ 6.4. Each Proof of Claim will be processed and validated by the Claims Administrator, who will follow up with Claimants as necessary to ensure complete submissions. *Id.* ¶ 6.5. Any Claimant whose Proof of Claim is rejected in whole or in part will receive notice of the decision and have an opportunity to remedy any

curable defects or request Court review. *Id.* ¶¶ 6.5-6.6.

Class Members also have the right to object to any aspect of the Settlement, attend the Settlement Fairness Hearing, or exclude themselves from the Settlement Class. *Id.* ¶ 5.2.

The Parties have the right to terminate the Settlement in the event it does not become Final. *Id.* ¶ 8.2. As is standard in securities class action settlements, Danaher also has the right to terminate the Settlement if requests for exclusion exceed an agreed-upon threshold set forth in a confidential Supplemental Agreement between the Parties. *Id.* ¶ 8.3. In the event the Settlement is terminated, the Parties will revert to their respective positions in the litigation before their agreement to enter into a Settlement. *Id.* ¶ 9.5.

### 2. Notice to the Class and Response to Date

In the Preliminary Approval Order, the Court ordered the Claims Administrator to: (i) mail or email the Summary Notice to all Class Members who can be identified through reasonable effort; (ii) mail a copy of the complete Notice to all Nominees who may hold Danaher common stock on behalf of beneficial owners; (iii) establish a website dedicated to the Settlement, where Class Members can download copies of all Settlement documents, including the complete Notice, and submit Proofs of Claim online; and (iv) publish the Summary Notice in *The Wall Street Journal* and on a national newswire service. ECF No. 55 ¶ 9. The Court also ordered the Claims Administrator to provide a Summary Notice to all beneficial owners identified by Nominees. *Id.* ¶ 10.

Verita has since carried out the notice program approved by the Court. On June 22, 2026, Verita (i) established a Settlement website at www.danahersecuritiessettlement.com, which includes, among other things, relevant deadlines for potential Class Members along with a copy of the Stipulation, the Preliminary Approval Order, the full Notice, the Proof of Claim form, and an online Claim submission page; and (ii) commenced its distribution of the Notice and Summary Notice. *See* Ex. 6 ("Datz Decl.") ¶¶ 2-7, 10. On June 29, 2026, Verita caused a copy of the Summary Notice to

be published in *The Wall Street Journal* and transmitted over *PR Newswire*. *Id.* ¶ 8. Large volumes of the Summary Notice were also sent out in response to requests from Nominees. *Id.* ¶ 5. In total, 732,306 potential Class Members were sent notice of the Settlement as of August 11, 2026. *Id.* ¶ 7.

The response from Class Members has been resoundingly positive. To date, there have been no objections to the Settlement, nor have there been any valid requested exclusion from the Class. D'Aloia Declaration ¶ 117; Datz Declaration ¶¶ 12.[2]

## STANDARD OF REVIEW

In this Circuit, there is a "strong public policy" that courts should "favor" the voluntary settlement of civil disputes. *Am. Security Vanlines, Inc. v. Gallagher*, 782 F.2d 1056, 1060 (D.C. Cir. 1986) (collecting cases). This is especially true for class actions, "which are often complex, drawn-out proceedings demanding a large share of finite judicial resources." *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993); *see also In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 16 (D.D.C. 2019) ("Class action settlements are favored as a matter of public policy in the District of Columbia Circuit.") (collecting cases).

Under Rule 23(e), class action claims may only be settled with Court approval. Specifically, a reviewing court may approve a class action settlement only after giving notice to potential class members and finding, after a hearing, that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). However, if a settlement is reached before a class is certified, the proposed settlement class must also meet all requirements for class certification under Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997); *accord In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 14 (D.D.C. 2015). Indeed, the 2018 amendments to Rule 23(e) expressly instruct that, "in addition to

[2] As explained in the Datz Delcaration, Verita received six (6) requests for exclusion from individual investors but those requests lacked basic information required by the Preliminary Approval Order to make such as a request, including the amount of Danaher shares held during the Class Period, if any. *See* Datz Decl. ¶ 12.

evaluating the proposal itself" under Rule 23(e)(2), "the court must determine whether it can certify the class under the standards of Rule 23(a) and (b) for purposes of judgment based on the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee notes to 2018 amendment.

## ARGUMENT

### I. CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

To give effect to the terms of the class-wide Settlement, and for purposes of Settlement only, Plaintiffs seek certification of the following Class:

> All Persons who purchased or otherwise acquired Danaher common stock between January 27, 2022 and October 23, 2023, inclusive, and who were damaged thereby, except: (i) Defendants and members of their immediate families; (ii) any person who was a director or officer of Danaher during the Class Period; (iii) any entity in which any Defendant has or had a controlling interest; (iv) the legal representatives, heirs, successors, or assigns of any such excluded party; and (v) any Class member that submits a valid and timely request for exclusion from the Class in accordance with the requirements set by the Court.

Such "settlement-only" classes are proper provided they meet the requirements of Rule 23, and have, in fact, become quite common. *Amchem*, 521 U.S. at 613. A court may certify a class only upon a showing that it satisfies the four requirements in Rule 23(a) and one subsection of Rule 23(b). *Id.* at 613-14; *accord In re Veneman*, 309 F.3d 789, 792 (D.C. Cir. 2002). Plaintiffs move for certification under Rule 23(a) and (b)(3). As explained below, all requirements are readily satisfied.

#### A. The Requirements of Rule 23 Are Satisfied

Rule 23(a) establishes four prerequisites that must be met to certify a class known as numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). In addition, Rule 23(b)(3) permits class-wide litigation if (i) questions of law or fact common to the class "predominate" over individual ones; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). In the Preliminary Approval Order, the Court found that all requirements of Rule 23(a) and Rule 23(b)(3)

"will likely be met" based on the information submitted by Plaintiffs at that time. ECF No. 55 at 2-3. There is no sound reason to depart from that conclusion.

If anything, new evidence validates that certification is warranted. In their Preliminary Approval Motion, Plaintiffs submitted proof that there were almost 4,000 members of the proposed Class—orders of magnitude more than necessary to satisfy the numerosity requirement of Rule 23(a)(1)—many of whom, in turn, likely held shares on behalf of vast numbers of beneficial owners. ECF No. 51-1 at 10-11. The notice procedures followed by Verita have identified ***730,000*** potential Class Members, confirming the Lead Counsel's expectations. *See* Datz Decl. ¶ 7. In addition, no circumstances have changed regarding the remaining requirements of Rule 23(a) and Rule 23(b)(3)—which are based on the nature of the claims asserted, Plaintiffs' interests in prosecuting the Action, and their counsel's experience—since the entry of the Preliminary Approval Order. Because "[n]othing material has changed" with respect to those requirements since preliminary approval, certification of the Class remains warranted. *Prince v. Aramark Corp.*, 257 F. Supp. 3d 20, 24 (D.D.C. 2017); *see also In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, at *4 (S.D. Cal. June 16, 2025) ("*ImmunityBio II*") (granting final certification of proposed class for settlement only when "no material changes have occurred since the Court's preliminary approval").

### B. The Court Should Appoint Pomerantz as Class Counsel and Cohen Milstein as Class Liaison Counsel

Rule 23 specifies that any class certification order entered by the Court "must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). Rule 23(g), in turn, directs the Court to consider four factors, including (1) work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1). In the Preliminary Approval Order, the Court found that "it will

likely be able to . . . appoint Lead Counsel Pomerantz LLP as Class counsel and Liaison Counsel Cohen Milstein Sellers & Toll PLLC as Class liaison counsel under Rule 23(g)" based on the information Plaintiffs submitted on their expertise in securities class actions and their thorough and efficient prosecution of the Action to date. ECF No. 55 at 3. Following the entry of the Preliminary Approval Order, Pomerantz and Cohen Milstein have continued to perform their duties on behalf of the Class by overseeing the notice program, working cooperatively with opposing counsel, and timely satisfying all deadlines and requirements associated with the Settlement. The outcomes they have achieved in the Action to date, and the quality of their submissions, are a testament to their expertise in in this field of law and are indicative that they will continue to zealously advocate on behalf of the Class. Therefore, Plaintiffs respectfully request that the Court appoint Pomerantz as Class counsel and Cohen Milstein to serve as Class liaison counsel.

## II. THE SETTLEMENT IS HIGHLY DESERVING OF FINAL APPROVAL

A class action settlement can be approved only upon a finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Whether a class action settlement should be approved as fair, reasonable, and adequate rests in the Court's sound discretion. *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 565 F. Supp. 2d 49, 54 (D.D.C. 2008). That discretion is, however, "constrained" by the strong judicial policy favoring the settlement of class actions. *Howard v. Liquidity Servs. Inc.*, 2018 WL 4853898, at *3 (D.D.C. Oct. 5, 2018) ("*Howard II*"); *accord Domestic Airline Travel*, 378 F. Supp. 3d at 16. Accordingly, "absent evidence of fraud or collusion, such settlements are not to be trifled with." *Howard II*, 2018 WL 4853898, at *3.

Rule 23(e)(2) was amended in 2018 to create uniformity among federal courts on the primary considerations they must weigh to determine if a proposed class action settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2) advisory committee notes to 2018 amendments. As amended, Rule 23(e)(2) directs courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The first two focus on "procedural" concerns, whereas the final two focus on the "substantive" terms of the settlement. Fed. R. Civ. P. 23(e)(2), advisory committee notes (2018 amendments). These factors overlap with those traditionally used by courts in this Circuit:

> (a) whether the settlement is the result of arms-length negotiations; (b) the terms of the settlement in relation to the strength of [plaintiffs'] case; (c) the status of the litigation; (d) the reaction of the class; and (e) the opinion of experienced counsel.

*Howard II*, 2018 WL 4853898, at *4 (collecting cases). The 2018 amendments to Rule 23(e) make clear that the factors enumerated therein were not designed to "displace" those previously used by courts to evaluate settlements, but rather to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision . . . ." Fed. R. Civ. P. 23(e)(2), advisory committee notes to 2018 amendments. Thus, courts may still consider additional factors in the exercise of discretion. *See, e.g.*, *Stephens v. Farmers Rest. Grp.*, 2019 WL 2550674, at *5 n.3 (D.D.C. June 20, 2019) (noting court will "consider those factors that courts have tended to review in this Circuit" after focusing on Rule 23(e)(2) factors).

Given the above, Plaintiffs will address the fairness, reasonableness, and adequacy of the Settlement principally in relation to the factors set forth in Rule 23(e)(2) but will also discuss the

application of non-duplicative additional factors traditionally used by courts in this Circuit as well. As detailed below, every one of these factors weighs heavily in favor of final approval.

**A. The Settlement Satisfies the Requirements of Rule 23(e)(2)**

**1. Plaintiffs and Lead Counsel Have Adequately Represented the Class**

The first consideration listed in Rule 23(e)(2) is whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g)," which govern class certification. 4 Newberg and Rubenstein on Class Actions § 13:48 (6th ed. 2022).

Rule 23(e)(2)(A) is satisfied for the same reasons that Rule 23(a)(4) and Rule 23(g) are satisfied. Brenda Hawkins was previously appointed as Lead Plaintiff (ECF No. 22) because she had "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). As both she and Derek Einersen possess claims that are typical of those of the Class (Point I.A, *supra*), Plaintiffs suffered losses for the same reason as all other Class Members. Thus, their interests are fully aligned to maximize the potential recovery. *See Freeport Partners, L.L.C. v. Allbritton*, 2006 WL 627140, at *7 (D.D.C. Mar. 13, 2006) (the "loss [plaintiff] claims to have suffered is identical to that allegedly incurred by other members of the class" and thus "its interests in this litigation . . . align perfectly with those of the class as a whole"); *see also, e.g.*, *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1332 (N.D. Ga. 2007) (a representative who suffers losses at any time during class period has incentive to establish liability "at every point in the class period . . . to maximize his own potential damages" because "the more the stock is inflated, the more every class member stands to recover"). To be sure, Plaintiffs have expressly stated that is their goal. *See* Ex. 1 ("Hawkins Decl.") ¶ 3, Ex. 2 (Einersen Decl.") ¶ 3; *see also* ECF No. 17-4 ¶ 5 ("My principal goal" is "to achieve the best possible recovery for the Class"). Thus, Plaintiffs have vigorously pursued the claims asserted on behalf of the Class. Since the start of this Action, Plaintiffs have reviewed

pleadings and court orders, regularly communicated with counsel regarding developments in the case, reviewed and approved responses to written discovery requests, facilitated the collection and timely production of responsive documents, provided sworn declarations, and made arrangements and prepared to sit for a deposition. *See* Hawkins Decl. ¶ 4, Einersen Decl. ¶ 3.

Plaintiffs have also demonstrated their commitment to this Action by retaining highly qualified counsel. Pomerantz and Cohen Milstein have decades of experience prosecuting class actions under the federal securities laws throughout the country, including this District, and have served or are serving as lead counsel in some of the largest and most significant securities class actions brought to date. *See* Ex. 3-C (Pomerantz firm resume); Ex. 4-C (Cohen Milstein firm resume). Indeed, courts have recognized their expertise in this field of law. *See In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016) ("There is no real dispute that Pomerantz is an established firm with considerable class action experience" and has "the skill and resources to represent the Classes adequately" in one of the largest securities class actions in the past decade); *see also, e.g.*, *Palm Tran, Inc.-Amalgamated Transit Union Local 1577 Pension Plan v. Emergent Biosolutions Inc.*, 2021 WL 6072812, at *6 (D. Md. Dec. 23, 2021) (appointing Pomerantz as lead counsel and Cohen Milstein as liaison counsel in securities class action because "[t]here is no question that the firms are qualified to serve in their respective positions"); *Kiken v. Lumber Liquidators Holdings, Inc.*, 2014 WL 12588686, at *5 (E.D. Va. May 14, 2014) (similar).

Further, by working on a contingency basis for a percentage of the common fund, "Plaintiff's counsel has incentive to litigate for the best possible recovery for the entire proposed Settlement Class." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008). Consequently, Plaintiffs' Counsel has devoted substantial time and resources to prosecuting the Action since its inception. Over the past three years, they have identified the claims, thoroughly

investigated their legal and factual bases, drafted two complaints, including a detailed amended pleading, successfully opposed Defendants' Motion to Dismiss, propounded numerous discovery requests, methodically negotiated the scope of the potential responses thereto, reviewed an extensive amount of information bearing on the claims, secured key evidence, submitted a comprehensive motion for class certification supported by testimony from a highly regarded expert, engaged in extensive discovery, and more. *See* D'Aloia Decl. ¶¶ 13-84. As detailed more fully in the accompanying motion for fees and expenses, Plaintiffs' Counsel have devoted more than $16,630,907.50 in attorney time to the Action. Indeed, their expertise and zealous advocacy have resulted in the single largest securities settlement in this Circuit.

These facts strongly indicate that Plaintiffs and Plaintiffs' Counsel have more than adequately represented the Class and will continue to do so going forward.

### 2. The Settlement Resulted from Informed Arm's-Length Negotiations

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). In this District, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 104 (D.D.C. 2004) (citing Manual for Complex Litigation (Third) § 30.42 (1995)); *see also Domestic Airline Travel*, 378 F. Supp. 3d at 17 (same). The Settlement here bears all the hallmarks of a non-collusive agreement that was the product of vigorous arm's length bargaining, undertaken in good faith with full knowledge of the case and its attendant risks.

The Settlement is the product of what can only be described as heavily negotiated arm's length bargaining. Settlement discussions were conducted before a highly experienced and well-regarded mediator, David Murphy of Phillips ADR. D'Aloia Decl. ¶ 76. The involvement of an experienced and neutral mediator in these discussions "bolsters the arm's length nature of the

negotiations." *Dew v. Mindfinders, Inc.*, 2021 WL 4797551, at *5 (D.D.C. Oct. 14, 2021); *see also Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 56 (D.D.C. 2010) (same for settlement reached after "a lengthy mediation session that was presided over by an experienced mediator"). Further, the initial terms of the Settlement were agreed to by the Parties based on a mediator's recommendation after they were unable to reach an accord on their own following 10 hours of unsuccessful negotiations (D'Aloia Decl. ¶ 79), confirming that negotiations were hard-fought and non-collusive. *See Stephens*, 2019 WL 2550674, at *6 ("arm's length" nature of settlement demonstrated by fact that parties reached an agreement only after "nine hours of in-person mediation" before an experienced mediator); *see also ImmunityBio II*, 2025 WL 1686263, at *7 (settlement based on "mediator's proposal" confirms it was "reached via non-collusive means"). In addition, counsel spent another month negotiating the terms and conditions of the Settlement in the Stipulation. D'Aloia Decl. ¶¶ 80-81. This too shows arm's-length negotiating. *See Little v. Wash. Metro. Area Transit Auth.*, 313 F. Supp. 3d 27, 37 (D.D.C. 2018) ("arms-length negotiations" found where "the parties continued to negotiate for weeks to determine the language of the Settlement Agreement" after reaching agreement in principle).

The Parties were also in a position to fully appreciate the strengths and weaknesses of the claims and defenses. Before filing the FAC, Plaintiffs completed an extensive investigation which included, among other things, the review of public information concerning Danaher and the industry in which it operated, interviews with former employees, and expert consultation. *See* D'Aloia Decl. ¶¶ 17-23. By the time they entered the Settlement, the Parties were informed by meaningful discovery, during which they completed the production of documents related to class certification and made substantial progress to facilitate discovery on merits issues, and Plaintiffs marshaled the evidence needed to support their class certification motion and prepared for depositions. *Id.* ¶¶ 29-

74. In advance of the mediation, the Parties also exchanged detailed mediation statements and replies thereto examining issues of liability and damages, along with supporting evidence developed in discovery, which were further vetted during the mediation. *Id.* ¶¶ 77-78. The Parties had ample information to make a well-informed decision. *See In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *1 (D.D.C. Oct. 23, 1998) ("sufficient attention has been given to the merits" when counsel reviewed more than 42,000 pages of documents and consulted with damages experts in securities class action); *APA*, 311 F.R.D. at 19 (exchange of mediation statements and confidential evidence in connection with mediation supports conclusion that parties were well-informed).

Finally, the "sophistication and experience of counsel" can further support the "arm's-length nature of the negotiations." *Howard II*, 2018 WL 4853898, at *4. Defendants here are represented by some of the most skilled and acclaimed class action attorneys in the country, all of whom specialize in litigating claims under the federal securities laws. D'Aloia Decl. ¶ 138. That Plaintiffs' Counsel secured the Settlement against such a formidable adversary in itself provides additional support that negotiations were non-collusive and conducted at arm's length.

On these facts, there is simply no "evidence of collusion or coercion on the part of the parties," and no reason to "doubt that the settlement was the product of legitimate negotiation on behalf of both sides." *Howard II*, 2018 WL 4853898, at *4. Thus, this factor weighs in favor of approval, and the Settlement is entitled to a presumption that it is fair, reasonable, and adequate. *Id.*

### 3. The Relief Provided to the Class by the Settlement Is Substantial

Under Rule 23(e)(2)(C), the Court must consider whether "the relief provided for the class is adequate," taking into account four factors enumerated therein. Fed. R. Civ. P. 23(e)(2)(C). What constitutes an "adequate" settlement is not susceptible to a mathematical formula. Because "[s]ettlement is the offspring of compromise[,] the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Indeed, "[t]he court should not reject a settlement merely because individual class members complain that they would have received more had they prevailed after a trial." *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998).

As explained below, all four factors in Rule 23(e)(2)(C) demonstrate that the Settlement provides an excellent outcome for the Class.

**Cost, Risks, and Delay of Continued Litigation**. Rule 23(e)(2)(C)(i) requires the Court to weigh the recovery provided by the Settlement against "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). In doing so, the "benefits to the class must be considered in juxtaposition with the risks attendant to continued litigation of [the] matter." *In re LivingSocial Marketing & Sales Practice Litig.*, 298 F.R.D. 1, 12 (D.D.C. 2013). That is, "liability cannot be assumed when evaluating a proposed settlement" but, rather, "balanced against the *likelihood* of obtaining a . . . recovery at trial." *Radosti*, 717 F. Supp. 2d at 58-59 (emphasis added); *see also Ceccone v. Equifax Info. Servs. LLC*, 2016 WL 5107202, at *10 (D.D.C. Aug. 29, 2016) (weighing guaranteed recovery against the "potential difficulties and uncertainties [that would] reduce the plaintiffs' expected recovery if the case had proceeded to trial"). While this case has real strengths, there are significant risks to securing *any*, much less a full, recovery.

To begin, the ability to secure any meaningful recovery in this Action depended in no small part on obtaining certification of a liability class. Defendants negotiated a schedule that provided deadlines for depositions and expert reports ahead of their response to Plaintiffs' class certification motion so they could mount a robust opposition, and several such depositions were scheduled at the time the Parties entered the Settlement. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y 2019) ("[a]lthough the risk of maintaining a class through trial is present in every class action" settlement approval is supported if "it is likely that defendants would oppose class

certification" if litigation continued). Further, even if Plaintiffs secured class certification, there is no guarantee certification would survive through trial, as Defendants retain the right to decertify or modify the class. Fed. R. Civ. P. 23(c)(1)(C). That Defendants could adduce new evidence during the course of discovery to seek such relief, or manageability issues could surface before trial, further weigh in favor of approving the Settlement. *See In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *11 (C.D. Cal. July 28, 2014) (risk that "subsequent facts adduced through discovery might have led to decertification . . . favors approval of the settlement" and collecting cases).

Similarly, Plaintiffs faced significant uncertainty establishing liability on the merits. Courts recognize that prevailing in securities class actions is "notably difficult and notoriously uncertain." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc. IPO Class Action Settlement*, 822 F. App'x 40 (2d Cir. 2020); *see also Howard v. SEC*, 376 F.3d 1136, 1148 n.20 (D.C. Cir. 2004) (noting "securities laws are 'complex and often uncertain'"). Here, Plaintiffs would need to prove (not merely allege) falsity with respect to statements about customer demand. This would require Plaintiffs to synthesize worldwide sales and inventory data along with evidence bearing on customer sentiment over a nearly two-year period for an $8 billion business, which is inherently fact-specific. *See* D'Aloia Decl. ¶ 100. A significant amount of this evidence is in the possession of Danaher's customers, who are third parties, which poses its own set of challenges. *Id.* ¶ 102. Defendants maintained, and would undoubtedly continue to maintain, that their statements about demand were reasonably consistent with myriad factors, not just those challenged by Plaintiffs, in a rapidly evolving and dynamic market. *Id.* ¶ 100. While proving scienter is always difficult, the forward-looking statement sustained by the Court is subject to a mental state imposed by the PSLRA safe harbor even *more* demanding than scienter. *See* ECF No. 37 at 16. Thus, Defendants could maintain that Blair simply expressed frustration with senior

leaders for failing to prepare a forecast consistent with available data as opposed to a forecast that satisfied market expectations and revised it accordingly. D'Aloia Decl. ¶ 105. Further, cases of this type present "complex and disputed questions concerning loss causation and damages," *In re Baan Co. Sec. Litig.*, 284 F. Supp. 2d 62, 64 (D.D.C. 2003), which the Parties planned to address with expert testimony. For example, Defendants could argue that the relevant stock declines took place during a period of great volatility and were either caused by industry-wide factors or that Plaintiffs' damages model fails to disaggregate the effect of those market-wide trends. D'Aloia Decl. ¶ 106. Whereas Plaintiffs would need to comprehensively satisfy all of these elements, Defendants need only defeat one element to prevail. Because Plaintiffs bear the burden of proof, Defendants could win at summary judgment or trial on these issues through a *Daubert* motion. Even if the case proceeded to trial, these matters could only be resolved through an inherently unpredictable "battle of the experts." *In re Fed. Nat'l Mortg. Ass'n Sec. Derivative & ERISA Litig.*, 4 F. Supp. 3d 94, 105 (D.D.C. 2013) ("*Fannie Mae*"). Of course, Defendants in all likelihood would attempt to appeal to a jury's sympathy by portraying Danaher as a company that built equipment to make life-saving products during a global health crisis. D'Aloia Decl. ¶ 99.

Moreover, the Settlement spares the Class the substantial cost and delay associated with further litigation. It is well-accepted that "securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *7 (S.D. Cal. July 24, 2020); *see also In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("[S]ecurities class actions are generally complex and expensive to prosecute."). Indeed, the parties in *Fannie Mae* reached a settlement only after a decade of litigation, during which they incurred over $15 million in expenses and had not even gone to trial. *Fannie Mae*, 4 F. Supp. 3d at 98, 112. Here, Defendants vigorously contested nearly every stage of

litigation, including discovery practice, and made clear they would continue to do so at every opportunity, such as class certification, summary judgment, trial, and beyond, if necessary. Indeed, if Plaintiffs secured a verdict at trial, "a likely appeal of any successful trial verdict for plaintiffs would [delay] final resolution of the case." *Id.* at 105. The sheer duration of time it takes to bring these matters to fruition presents its own risk: several seemingly secure jury verdicts have been reversed or overturned due to intervening changes in the law. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414, 433 (7th Cir. 2015) (reversing and remanding securities class action jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of intervening Supreme Court case); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011) (Supreme Court decision after entry of a verdict in plaintiffs' favor reduced billion-dollar award to $78 million).

In contrast, the Settlement guarantees the Class $172.5 million in cash. If approved, this will be the *largest* federal securities fraud class action recovery in this Circuit, eclipsing the previous record by almost $20 million. *See Fannie Mae*, 4 F. Supp. 3d at 103 ($153 million settlement was "the largest securities class action settlement in our Circuit since the PSLRA went into effect"). This "remarkable statistic in itself tends to indicate the favorability of this recovery for plaintiffs." *Id.* Indeed, the Settlement Amount is *ten times* larger than the median securities settlement in 2025 ($17.3 million). ECF No. 51-6 at 3; ECF No. 51-7 at 23. Of course, the recovery must be viewed in the context of potential damages. Plaintiffs' expert estimates that maximum recoverable damages in this Action range from $2.4 billion to $5.7 billion. D'Aloia Decl. ¶ 129. The Settlement Amount therefore represents a recovery between 3.0% and 7.1% of the maximum recoverable damages.

This relief more than adequately accounts for the not insubstantial risk of securing no recovery at all after years of protracted and expensive litigation. Because of the risks, cost, and

delay of successfully litigating such cases through trial and appeal, courts regularly approve settlements that provide similar recovery in like cases. *See Fannie Mae*, 4 F. Supp. 3d at 103-04 (recovery of 4-8% in case with $2-4 billion in damages); *see also, e.g.*, *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 483 (S.D.N.Y. 2009) (2% recovery in case with $32 billion in damages); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (3-7% recovery in case with $1.7-4.1 billion in damages); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153007, at *6 (C.D. Cal. Sept. 12, 2005) (2.7% recovery in case with $5.5 billion in damages). Indeed, empirical data confirms that the amount recovered here is extraordinary. Cornerstone Research, which conducts semiannual analysis of securities settlements, reported that the median recovery in cases with damages of more than $1 billion was 3% in 2025. *See* Ex. 8 fig. 8. Similarly, NERA, another entity that collects such data, reported that, between 2016 and 2025, the median recovery in cases with damages of $1-5 billion was 1.3%, and the median recovery in cases with damages of $5-10 billion was 0.7%. *See* Ex. 7 fig. 23. In short, the immediate, record-setting relief provided by the Settlement is well within the range of reasonableness.

**Effectiveness of Proposed Method for Distributing Relief**. Rule 23(e)(2)(C)(ii) calls for the court to weigh potential relief against "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). This requires the court to "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims" without being "unduly demanding." Fed. R. Civ. P. 23(e)(2) advisory committee notes to 2018 amendments. Here, the method for processing claims and distributing relief to eligible Claimants is well-established and effective.

As summarized above, Claimants are required to submit records establishing all relevant transactions in Danaher common stock that may entitle them to a distribution from the Net

Settlement Fund. Stip. ¶ 6.4. This is necessary insofar as neither Plaintiffs nor Defendants possess the trading data necessary for a claim-free process. Proofs of Claim submitted with insufficient supporting documents or that otherwise do not meet the requirements for a distribution will be rejected, but such Claimants will receive notice of the decision and have an opportunity to correct any curable defects or request Court review. *Id.* ¶ 6.5. In addition, Settlement proceeds will be equitably distributed to Class Members in accordance with the Plan of Allocation discussed more fully in Point III by check. These procedures efficiently facilitate the prompt distribution of Settlement proceeds only to those who have a legitimate right thereto and, as such, "are regularly held to be 'effective' in securities class actions." *ImmunityBio II*, 2025 WL 1686263, at *10; *see also, e.g.*, *In re N. Dynasty Minerals Ltd. Sec. Litig.*, 2023 WL 5511513, at *8 (E.D.N.Y. Aug. 24, 2023) (similar procedures "impose[] a minimal burden on claimants and will adequately filter out unjustified claims"); *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs, Inc.*, 2023 WL 1454371, at *11 (M.D. Pa. Feb. 1, 2023) (similar procedures are "consistent with standard practice in securities class actions"); *Signet Jewelers*, 2020 WL 4196468, at *13 (similar procedures are "well-established, effective methods that have been widely used in securities class-action litigation").

**<u>Proposed Award of Attorneys' Fees</u>**. Rule 23(e)(2)(C)(iii) requires the Court to account for "the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). Plaintiffs' Counsel is applying for a fee award of 30% of the Settlement Amount. As explained more fully in the motion for award of attorneys' fees and expenses, the requested fee is reasonable considering the work performed, results obtained, and risks assumed, and consistent with awards in similar matters. *See In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *14 (D.D.C. July 16, 2001) ("*Vitamins III*") (34% on record-setting $359.4 million antitrust settlement); *see also, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 2015 WL 14085135 (S.D.N.Y. Nov. 15, 2015), 2016 WL 11801286 (S.D.N.Y. May

6, 2016) (30% of two securities settlements totaling $180 million); *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*, 2019 WL 1529517, at *1 (W.D. Ark. Apr. 8, 2019) (30% of $160 million securities settlement). Moreover, the Settlement is not contingent on any ruling with respect to attorneys' fees (Stip. ¶ 7.4), which further supports approval. *See Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 108 (D.D.C. 2013) (noting that the fee award is not a "condition of the settlement" which will "continue to bind the parties and class members" if it is denied).

**Rule 23(e) Agreements**. Finally, the Court must consider "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), that is, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The Parties here have entered into a confidential Supplemental Agreement that establishes conditions under which Danaher may terminate the Settlement if those totaling a certain amount Danaher stock "opt out" of the Settlement. Stip. ¶ 8.3. "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement." *Signet Jewelers*, 2020 WL 4196468, at *13; *see also In re Stable Rd. Acquisition Corp. Sec. Litig.*, 2024 WL 3643393, at *7 (C.D. Cal. Apr. 23, 2024) (similar). The specific terms of the Supplemental Agreement are confidential "to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts for themselves at the expense of other Settlement Class members." 2025 WL 1686263, at *10; *see also Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *7 (S.D.N.Y. Sept. 29, 2022) (opt-out agreements are kept are confidential "to avoid creating incentives for a small group of investors to opt out solely to leverage the [termination] threshold to exact an individual settlement" at the expense of the class). In any case, the lack of any valid opt-outs "renders the Supplemental Agreement a non-factor at this point." *Signet Jewelers*, 2020 WL 4196468, at *13.

### 4. The Settlement Treats all Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement "treats class members

equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Such is the case here. As explained more fully below in Point **Error! Reference source not found.**, the proposed Plan of Allocation is designed to distribute to each Authorized Claimant a pro rata share of the Net Settlement Fund based on his, her, or its "Recognized Losses" divided by the total Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. While each Authorized Claimant will receive a different amount, the "apportionment of relief among the class based on an individualized assessment of class members' claims still treats class members 'equitably relative to each other.'" *Randle v. SunTrust Bank, Inc.*, 2024 WL 706807, at *7 (D.D.C. Feb. 21, 2024) (quoting Fed. R. Civ. P. 23(e)(2)(D)); *see also, e.g.*, *Orrstown Fin.*, 2023 WL 1454371, at *12 (allocation plan in securities case that distributes funds to class members "on a pro rata basis determined by the relative size of their loss . . . treats Class Members equitably relative to each other"); *In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *8 (S.D. Cal. Dec. 18, 2019) (same when distribution formula "allocate[s] the settlement funds to class members based on the extent of their injuries"); *Christine Asia Co. v. Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (same when allocation plan provides claimants with "*pro rata* share of the Net Settlement Fund based on the amount of their Recognized Loss").

The Notice also advised that Plaintiffs may request an aggregate service award in an amount not to exceed $70,000—which, at most, represents 0.04% of the Settlement Amount—to compensate them for time spent pursuing the matter on behalf of the Class. Ex. 6-B at 2. Such awards are "common" in class action litigation, "especially when there is a common fund created to benefit the entire class." *Little*, 313 F. Supp. 3d at 35. Awards of this type are meant to "compensate plaintiffs for the services they provided and the risks they incurred" on behalf of absent class members. *Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 105 (D.D.C. 2013). Thus, a reasonable service award

does not constitute inequitable treatment. *See Nat'l Veterans Servs. Program v. United States*, 170 F.4th 1353, 1367 (Fed. Cir. 2026) ("Because class representatives take on this extra burden, incentive awards are also in line with Rule 23's requirement that class members be treated equitably relative to each other."); *In re BofI Holdings, Inc. Sec. Litig.*, 2022 WL 9497235, at *8 (S.D. Cal. Oct. 14, 2022) (incentive payments to representative parties "do not render a settlement inequitable because such payments reflect that these plaintiffs have contributed efforts to benefit the class while bearing the risk of nonrecovery and retaliation"). Furthermore, as detailed more fully in the accompanying motion for attorneys' fees and expenses, the service award requested here is fully in line with awards granted in similar cases.

### B. The Remaining D.C. Circuit Factors Support Approval

#### 1. The Positive Reaction of the Settlement Class

The reaction of the class to the proposed settlement is another factor that speaks to its fairness and adequacy. *Vitamins III*, 305 F. Supp. 2d at 105. Indeed, a "low number of opt outs and objectors supports the conclusion that the terms of the settlement were viewed favorably by the overwhelming majority of class members." *Bynum v. Dist. of Columbia*, 412 F. Supp. 2d 73, 77 (D.D.C. 2006); *see also Newbridge*, 1998 WL 765724, at *2 ("The absence of objections, and the negligible requests for exclusion, give rise to a strong inference of satisfaction among the class members."). Pursuant to the Preliminary Approval Order, Verita has sent more than 730,000 copies of the notice to potential Class Members and/or their nominees. *See* Datz Decl. ¶ 7. While the deadline set by the Court for Class Members to lodge objections is August 20, 2026, the fact that there have been no objections to the Settlement or valid opt-out requests to date is strong evidence that Class Members view it favorably. *See Kinard v. E. Capital Family Rental, L.P.*, 331 F.R.D. 206, 217 (D.D.C. 2019) (the "lack of any opt-outs or objectors . . . weighs heavily in favor of approving the settlement"); *Howard II*, 2018 WL 4853898, at *6 (the "lack of any objections to any

aspect of the Settlement Agreement weighs in favor of approval"); *Freeport Partners*, 2006 WL 627140, at *10 ("That the class reacted to the proposed settlement with virtually unqualified support, presenting no substantive objection to it, strongly suggests that it is fair, reasonable, and adequate."); *Baan*, 284 F. Supp. 2d at 66 ("The absence of objections to the Settlement and negligible requests for exclusion also supports its approval."). As noted in Plaintiffs' class certification motion, the Class includes thousands of institutional investors. ECF No. 46-1 at 12-13. This means thousands of sophisticated parties with the means and resources to object or opt out reviewed the Settlement and chose not to do so. *See In re Ampicillin Antitrust Litig.*, 81 F.R.D. 395, 399 (D.D.C. 1978) (lack of opposition is "especially significant in light of the fact that large and presumably sophisticated businesses sought to share in the settlement without objection"). If there are any objections lodged after this filing, they will be addressed in Plaintiffs' reply brief, due August 27, 2026.

**2. The Opinion of Experienced Counsel**

The opinion of counsel with expertise in the applicable area of litigation "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *6 (D.D.C. June 16, 2003) ("*Lorazepam II*"); *see also Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 164 (D.D.C. 2014) (putting "substantial stock in the views of counsel" where "[c]ounsel for both parties . . . are experienced in this type of litigation"). As explained above, Plaintiffs' Counsel and Defendants' counsel are both highly experienced class action attorneys who have litigated such cases throughout the country for decades. Their independent judgement that the Settlement is in the best interest of their clients based on the totality of circumstances provides further evidence of its *bona fides*.

## III. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

As stated in the Notice, the Net Settlement Fund will be distributed to Authorized Claimants in accordance with the Plan of Allocation described therein. ECF No. 55-1 at 15-19. The Plan of

Allocation is considered separately from the Settlement (Stip. ¶ 6.11), but, like the Settlement itself, should be approved if it is "fair, reasonable, and adequate." *Howard II*, 2018 WL 4853898, at *6-7 (quoting *Lorazepam II*, 2003 WL 22037741, at *7). A plan of allocation "need not be perfect." *Fannie Mae*, 4 F. Supp. 3d at 108. An allocation formula need only have a "reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* at 108-09. In general, a plan of allocation will suffice if there is a "rough correlation" between the "distribution and the relative amount[] of damages." *Lorazepam II*, 2003 WL 22037741, at *7. Thus, distribution plans that "apportion funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable." *Fannie Mae*, 4 F. Supp. 3d at 109.

As described in the Notice, the Plan of Allocation was developed with the assistance of Plaintiffs' damages expert and designed to equitably distribute the Net Settlement Fund to Authorized Claimants based on their respective economic losses due to the alleged fraud, as opposed to market-wide factors, industry-wide factors, or company-specific factors unrelated to the alleged fraud. *See* Ex. 6-B at 10-12. Each Authorized Claimant's economic losses attributable to the fraud are calculated using the "Recognized Loss" formula. *Id*. The formula depends on several factors, including when the shares were purchased and in what amounts, whether the shares were ever sold, and, if so, when they were sold and for what amounts, consistent with general rules for recovery under the federal securities laws. *Id*. The Net Settlement Fund will then be distributed to each Authorized Claimant on a *pro rata* basis based on the amount of their Recognized Loss relative to the total Net Settlement Fund. *Id*. If a Claimant's Recognized Loss is less than $10.00, then no distribution will be made. *Id*.

Courts in this District have found nearly identical settlement allocation plans, developed with the assistance of economic experts, to be fair, reasonable, and adequate in other securities class

actions. *See Howard II*, 2018 WL 4853898, at *7; *Fannie Mae*, 4 F. Supp. 3d at 107-09. Indeed, courts nationwide find plans of this type to be "customary" and "standard" in securities class action settlements. *Bernstein v. Ginkgo Bioworks Holdings, Inc.*, 2024 WL 5112227, at *5 (N.D. Cal. Dec. 13, 2024); *see also, e.g.*, *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) (plan of allocation based on purchase, sale, and amount of inflation are "common").

The fairness of the plan is not disturbed by the provision not to pay de minimis claims under $10. Such small checks are frequently discarded by recipients and "cause a disproportionate administrative expense to the fund," and, thus, other Class Members. *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328-29 (3d Cir. 2011) ("[D]e minimis thresholds for payable claims are beneficial to the class as a whole since they save the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs and courts have frequently approved such thresholds, often at $10."). Moreover, the lack of any objections to the Plan of Allocation after distributing the Notice provides further evidence that it is fair. *See Stephens v. US Airways Grp., Inc.*, 102 F. Supp. 3d 222, 229 (D.D.C. 2015); *see also Howard II*, 2018 WL 4853898, at *7 (similar).

## CONCLUSION

The complexity of the facts, the substantial expenses if this litigation were to continue, and the risks attendant to prevailing weigh heavily in favor of accepting this record-setting Settlement for $172.5 million, which provides a substantial, immediate, and certain benefit to the Class. Accordingly, Plaintiffs respectfully request that the Court (i) certify the Class for purposes of Settlement; (ii) appoint Pomerantz as Class counsel and Cohen Milstein as liaison Class counsel; (iii) approve the Settlement; (iv) approve the Plan of Allocation; and (v) enter the Judgment in the form previously submitted to the Court as Exhibit B to the Stipulation.

Dated: August 13, 2026

Respectfully submitted,

*/s/ Justin D. D'Aloia*
Jeremy A. Lieberman (*pro hac vice*)
Justin D. D'Aloia (*pro hac vice*)
Guy Yedwab
**POMERANTZ LLP**
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
jdaloia@pomlaw.com
gyedwab@pomlaw.com

*Counsel for Plaintiffs and Lead Counsel for the Proposed Class*

Daniel S. Sommers (Bar No. 416549)
Jan E. Messerschmidt (Bar No. 1031488)
**COHEN MILSTEIN SELLERS & TOLL LLP**
1100 New York Ave., NW
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
dsommers@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

*Counsel for Plaintiffs and Liaison Counsel for the Proposed Class*

Brian Schall
David J. Schwartz
**SCHALL, BROWN & SCHWARTZ LLP**
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Tel: (424) 303-1964
Fax: (213) 519-5876
brian@schallfirm.com
david@schallfirm.com

*Additional Counsel for Plaintiff Derek Einersen*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.3, I hereby certify that, on this 13th day of August, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Justin D. D'Aloia*
Justin D. D'Aloia