**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BRENDA HAWKINS, and DEREK EINERSEN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

DANAHER CORPORATION, RAINER M. BLAIR, MATT MCGREW, and EMMANUEL LIGNER,

Defendants.

Case No. 1:23-cv-02055 (AHA)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....... 1

ARGUMENT ....... 3

I. THE REQUESTED FEE AWARD IS FAIR AND REASONABLE ....... 3

A. Counsel Is Entitled to a Reasonable Fee Award from the Common Fund ....... 4

B. A Reasonable Percentage of the Common Fund Should Be Awarded ....... 4

C. All Relevant Factors Support the Percentage Fee Requested ....... 5

1. The Size of the Fund and the Number of Persons Benefited Support the Fee Request ....... 6

2. The Absence of Any Objections to Date Supports the Fee Request ....... 7

3. The Skill and Efficiency of Plaintiffs' Counsel Supports the Fee Request ....... 8

4. The Complexity and Duration of the Litigation Supports the Fee Request ....... 11

5. The Risk of Non-Payment Supports the Fee Request ....... 13

6. The Amount of Time Plaintiffs' Counsel Devoted to the Action Supports the Fee Request ....... 15

7. Fee Awards in Similar Cases Support the Fee Request ....... 16

D. Additional Considerations Support the Requested Fee Award ....... 18

1. The Requested Fee Is Consistent with the Fee Cap Negotiated with Plaintiffs at the Outset of the Action ....... 18

2. A Lodestar Cross-Check Confirms That the Fee Request Is Reasonable ....... 19

II. COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ....... 21

III. THE AWARD TO PLAINTIFFS SHOULD BE APPROVED ....... 23

CONCLUSION ....... 24

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Alphabet, Inc. Sec. Litig.*,
2024 WL 4354988 (N.D. Cal. Sept. 30, 2024) ....................20

*In re Alstom S.A. Sec. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010)....................14

*In re Alta Mesa Res., Inc. Sec. Litig.*,
2025 WL 1901350 (S.D. Tex. May 6, 2025) ....................17

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014)....................9

*Anwar v. Fairfield Greenwich Ltd.*,
2015 WL 14085135 (S.D.N.Y. Nov. 15, 2015), 2016 WL 11801286
(S.D.N.Y. May 6, 2016)....................17

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ....................17

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002)....................9

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) ....................14

*In re Baan Co. Sec. Litig.*,
288 F. Supp. 2d 14 (D.D.C. 2003) ....................4, 7, 11

*Bebchick v. Wash. Metro. Area Transit Comm'n*,
805 F.2d 396 (D.C. Cir. 1986) ....................3

*In re Black Farmers Discrimination Litig.*,
953 F. Supp. 2d 82 (D.D.C. 2013) ....................19, 20

*Blum v. Stenson*,
465 U.S. 886 (1984)....................4, 18

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....................4

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)....................18

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005)....................5

*In re Cent. Eur. Distrib. Corp. Sec. Litig.*,
2014 WL 12608150 (D.N.J. Nov. 14, 2014) ....................11, 12

*Chabot v. Walgreens Boots Alliance, Inc.*,
2024 WL 3250930 (M.D. Pa. Feb. 7, 2024) ....................17

*In re Charter Commc'ns, Inc. Sec. Litig.*,
2005 WL 4045741 (E.D. Mo. June 30, 2005) ....................20

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ....................14, 18

*City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*,
2019 WL 1529517 (W.D. Ark. Apr. 8, 2019)....................17

*Democratic Cent. Comm. v. Wash. Metro. Area Transit Comm'n*,
3 F.3d 1568 (D.C. Cir. 1993) ....................4

*Dicker v. TuSimple Holdings, Inc.*,
2024 WL 5181968 (S.D. Cal. Dec. 18, 2024)....................20

*In re Domestic Airline Travel Antitrust Litig.*,
2019 WL 5135424 (D.D.C. May 14, 2019)....................21, 22

*In re Envision Healthcare Corp. Sec. Litig.*,
2024 WL 1270007 (M.D. Tenn. Mar. 21, 2024) ....................17

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
2022 WL 2663873 (D. Kan. July 11, 2022) ....................17

*In re Fed. Nat'l Mortg. Ass'n Sec. Derivative & ERISA Litig.*,
4 F. Supp. 3d 94 (D.D.C. 2013) ....................4, 6, 13, 17

*Fernandez v. DouYu Int'l Holdings, Ltd.*,
2025 WL 3564643 (D.N.J. Dec. 12, 2025)....................11

*Ferrer v. CareFirst, Inc.*,
2019 WL 11320974 ....................13

*Freeland v. Iridium World Commc'ns, Ltd.*,
No. 1:99-cv-1002 (D.D.C. Oct. 23, 2008) ....................16

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir.2000)....................6, 7, 11

*Howard v. Liquidity Servs. Inc.*,
2018 WL 4853898 (D.D.C. Oct. 5, 2018) ....................5, 20, 22

*In re Ikon Office Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)....................7, 11

*James v. Dist. of Columbia*,
302 F. Supp. 3d 213 (D.D.C. 2018)....................20

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007)....................14

*Jien v. Perdue Farms, Inc.*,
2025 WL 3725489 (D. Md. June 5, 2025)....................17

*Jones v. Chopra*,
No. 1:18-cv-02132 (D.D.C. Jan. 18, 2024)....................24

*Kanefsky v. Honeywell Int'l, Inc.*,
2022 WL 1320827 (D.N.J. May 3, 2022)....................7

**In re Lorazepam & Clorazepate Antitrust Litig.*,
2003 WL 22037741 (D.D.C. June 16, 2003).................... *passim*

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................12

*In re MCI Commc'ns Corp. Sec. Litig.*,
No. 1:97-cv-1976 (D.D.C. Nov. 16, 2006)....................16

*Meijer v. Barr Pharms., Inc.*,
2009 WL 10744520 (D.D.C. Apr. 20, 2009)....................24

*Missouri v. Jenkins ex rel. Agyei*,
491 U.S. 274 (1989)....................20

*In re Mylan N.V. Sec. Litig.*,
666 F. Supp. 3d 266 (S.D.N.Y. 2023), *aff'd sub nom. Menorah Mivtachim Ins. Ltd. v. Sheehan*, 2024 WL 1613907 (2d Cir. 2024)....................14

*Nat'l Veterans Legal Servs. Program v. United States*,
724 F. Supp. 3d 1 (D.D.C. 2024)....................19

**In re Newbridge Networks Sec. Litig.*,
1998 WL 765724 (D.D.C. Oct. 23, 1998)....................5, 8, 16, 23

*In re Nifedipine Antitrust Litig.*,
2011 WL 13392312 (D.D.C. Jan. 1, 2011)....................16, 24

*In re Nortel Networks Corp. Sec. Litig.*,
539 F.3d 129 (2d Cir. 2008)....................18

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................9, 10

*Oncology & Radiation Assocs. v. Bristol-Myers Squibb Co.*,
No. 1:01-cv-2313 (D.D.C. Sept. 3, 2003) ....................16

*P. Van Hove BVBA v. Travel Grp., Inc.*,
2017 WL 2734714 (D.N.J. June 26, 2017) ....................13

*In re Par Pharms. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013) ....................11

*Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita Inc.*,
2021 WL 2981970 (D. Colo. July 15, 2021) ....................7, 14, 17

*Pearlstein v. BlackBerry Ltd.*,
2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ....................17, 24

*Plymouth Cnty. Ret. Ass'n v. Advisory Bd. Co.*,
2020 WL 2299889 (D.D.C. May 6, 2020) ....................5

*Radosti v. Envision EMI, LLC*,
760 F. Supp. 2d 73 (D.D.C. 2011) ....................12, 13, 15

*Randle v. SunTrust Bank, Inc.*,
2024 WL 706807 (D.D.C. Feb. 21, 2024) ....................22, 23, 24

*In re Rite Aid Corp. Sec. Litig.*,
362 F. Supp. 2d 587 (E.D. Pa. 2005) ....................20

*Rogowski v. State Farm Life Ins. Co.*,
2023 WL 5125113 (W.D. Mo. Apr. 18, 2023) ....................17

*Schuh v. HCA Holdings, Inc.*,
2016 WL 10570957 (M.D. Tenn. Apr. 14, 2016) ....................17

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ....................19

*Standard Iron Works v. ArcelorMittal*,
2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) ....................18

*Stephens v. US Airways Grp., Inc.*,
102 F. Supp. 3d 222 (D.D.C. 2015) ....................6, 8, 21

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ....................18

**Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993) ........................................................................ *passim*

*In re TikTok, Inc., Consumer Privacy Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) ..........................................................................9

*Trombley v. Nat'l City Bank*,
826 F. Supp. 2d 179 (D.D.C. 2011) ............................................................................22

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ..........................................................................................5

*In re U.S. Foodservice, Inc. Pricing Litig.*,
2014 WL 12862264 (D. Conn. Dec. 9, 2014)..............................................................17

*In re Viropharma Inc. Sec. Litig.*,
2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ...........................................................6, 8, 15

*Vista Healthplan, Inc. v. Warner Holdings Co. III*,
246 F.R.D. 349 (D.D.C. 2007).....................................................................................8, 24

**In re Vitamins Antitrust Litig.*,
2001 WL 34312839 (D.D.C. July 16, 2001)............................................................. *passim*

*Wells v. Allstate Ins. Co.*,
557 F. Supp. 2d 1 (D.D.C. 2008) ...................................................................................7

*Whitely v. Zynerba Pharms., Inc.*,
2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) ..............................................................11

*In re Xcel Energy, Inc. Sec., Deriv. & ERISA Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005)..........................................................................20

**Statutes**

15 U.S.C. § 78u-4(a)(6) .....................................................................................................5

*Private Securities Litigation Reform Act of 1995 ................................................... *passim*

**Rules**

Fed. R. Civ. P. 23(h) ..........................................................................................................3

**Other Authorities**

Manual for Complex Litigation § 14.121 (4th ed.)............................................................5

Lead Counsel Pomerantz LLP ("Pomerantz") and Liaison Counsel Cohen Milstein Sellers & Toll LLP ("Cohen Milstein"), on behalf of all Plaintiffs' Counsel in the Action, respectfully submit this memorandum of points and authorities in support of their motion for an award of attorneys' fees and litigation expenses (the "Motion").[1]

## PRELIMINARY STATEMENT

Plaintiffs' Counsel have secured a Settlement that will resolve this Action in its entirety for $172.5 million in cash. The Settlement, if approved, will be the largest securities recovery ***ever*** in this Circuit. It represents an outstanding result for the Class and is a direct result of the skill, tenacity, and effective advocacy of Plaintiffs' Counsel. Plaintiffs' Counsel have not received any compensation for their work on this case since its inception and advanced their own attorney time and money to prosecute the claims on behalf of the Class. They now ask the Court to award (i) attorneys' fees in the amount of 30% of the Settlement Fund, or $51,750,000 with interest; (ii) $504,502.71 in out-of-pocket litigation expenses; and (iii) nominal service payments to Plaintiffs.

The fee request is fully warranted under the circumstances. To achieve this substantial recovery, Plaintiffs' Counsel vigorously pursued this Action for three years, successfully opposing Defendants' motion to dismiss, building the case through substantial discovery, overcoming myriad discovery disputes, moving for class certification, and negotiating aggressively against one of the most respected defense firms on a fully contingent basis without any guarantee of remuneration. Despite the risk, Plaintiffs' Counsel advanced over 25,000 hours of professional time to the prosecution of this matter, representing $16,630,907.50 in legal services. Plaintiffs' Counsel undertook this tremendous investment of time and resources in the face of significant obstacles to

[1] All capitalized terms not otherwise defined herein have the meaning set forth in the Stipulation of Settlement, dated April 20, 2026 (ECF No. 51-3) (the "Stipulation") or the accompanying Declaration of Justin D. D'Aloia ("D'Aloia Declaration"). Citations to "Ex." refer to the exhibits attached to the D'Aloia Declaration. All citations and internal quotations in legal citations are omitted unless otherwise noted.

prevailing on the claims at nearly every stage of the case. To succeed in the Action, Plaintiffs' Counsel deployed a large, dedicated group of professionals to develop, support, and aggressively pursue the Action, including not only class action litigators with subject-matter expertise, but also highly experienced investigators, paralegals, and administrative staff. As explained below, the requested fee amount is also squarely within the range of fees awarded in securities class actions with similar recoveries and further justified by a lodestar cross-check.

Lead Counsel also seeks reimbursement for $504,502.71 in out-of-pocket expenses that Plaintiffs' Counsel incurred in connection with the prosecution of the claims in this Action. As detailed more fully herein, these expenses were reasonable and necessary for the successful prosecution of this Action and are of the kind regularly reimbursed by courts within this Circuit.

Plaintiffs similarly request a service award in the amount of $35,000 for Lead Plaintiff and $30,000 for additional plaintiff Derek Einersen for their personal time and effort dedicated to the successful prosecution of this Action for the benefit of the Settlement Class. Among other things, Plaintiffs have reviewed and approved court filings, overseen Plaintiffs' Counsel through periodic communications, provided timely responses and information in response to numerous discovery requests, and reviewed and approved the Settlement. These types of efforts are regularly compensated by courts in this Circuit with awards far greater than those sought here.

Notably, these requests appear to enjoy near unanimous support from the Class. Notice of the Settlement was sent to over 730,000 potential Class Members. The notice informed Class Members that Lead Counsel planned to apply for (i) an award of attorney fees in an amount not to exceed 33 ⅓% of the Settlement Amount; (ii) reimbursement of litigation expenses up to $850,000; and (iii) aggregate compensatory awards to Plaintiffs in an amount not to exceed $70,000. The notice also explained that Class Members had the right to object to any part of the proposed

Settlement, including these planned requests, and explained the steps they needed to follow to do so. To date, Class Members have not filed ***any*** objections to these requests, providing strong evidence that the requests are reasonable under the circumstances. Indeed, the requested fee is *below* that stated in the notice, authorized in the retainer Plaintiffs signed at the outset of the case, and Plaintiffs have expressly endorsed the fee request as fair and reasonable in light of the result achieved, the quality of the work counsel performed, and the risks associated with litigating the claims.

Thus, Lead Counsel respectfully requests that the Court grant the Motion in full.

## ARGUMENT

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). It has long been the law that "a party who creates, preserves, or increases the value of a fund in which others have an ownership interest" may be "reimbursed from that fund for litigation expenses incurred, including counsel fees." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993) (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164 (1939)). The policy for this rule—known as the common fund doctrine—is to avoid inequity. "[U]nless the costs of litigation are spread to the beneficiaries of the fund they will be unjustly enriched by the attorney's efforts." *Id.*; *see also Bebchick v. Wash. Metro. Area Transit Comm'n*, 805 F.2d 396, 402 (D.C. Cir. 1986) (common fund doctrine is "designed to spread the costs of litigation among all the beneficiaries of an identifiable fund").

## I. THE REQUESTED FEE AWARD IS FAIR AND REASONABLE

Lead Counsel requests attorneys' fees in the amount of thirty percent (30%) of the Settlement Fund as compensation for the services they provided in connection with this Action. As detailed more fully below, this fee request is fully consistent with controlling law, fair and reasonable under the circumstances, and well within the range of fee awards in similar cases.

### A. Counsel Is Entitled to a Reasonable Fee Award from the Common Fund

Under the common fund doctrine, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). That is, the common fund doctrine allows an "attorney whose efforts created, increased or preserved a fund to recover from the fund the costs of his litigation, including attorneys' fees." *In re Baan Co. Sec. Litig.*, 288 F. Supp. 2d 14, 16 (D.D.C. 2003). The Settlement secured by Plaintiffs' Counsel establishes an interest-bearing Settlement Fund consisting of $172.5 million in cash for the benefit of the Class. Accordingly, Plaintiffs' Counsel are entitled to a reasonable share of those proceeds for their services.

### B. A Reasonable Percentage of the Common Fund Should Be Awarded

The Supreme Court has long recognized that, under the common fund doctrine, courts may award as attorneys' fees "a percentage of the fund." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). In fact, "every Supreme Court case that has addressed the issue has determined reasonable fees payable from a common fund on a percentage of the fund basis." *Democratic Cent. Comm. v. Wash. Metro. Area Transit Comm'n*, 3 F.3d 1568, 1573 (D.C. Cir. 1993) ("*DCC*") (collecting cases). In *Swedish Hospital*, the D.C. Circuit endorsed the percentage-of-fund method as the "appropriate mechanism for determining the attorney fees award in common fund cases." 1 F.3d at 104; *see also In re Fed. Nat'l Mortg. Ass'n Sec. Derivative & ERISA Litig.*, 4 F. Supp. 3d 94, 110 (D.D.C. 2013) ("*Fannie Mae*") ("[O]ur Circuit has joined other circuits" in concluding that the percentage method is the "appropriate" measure for fees in common fund cases).

Unlike the "lodestar" method—which multiplies hours expended by a reasonable hourly rate—the percentage-of-fund approach rewards class counsel for the result obtained rather than hours billed. *See Swedish Hosp.*, 1 F.3d at 1269. Thus, the percentage-of-fund method is said to "align more closely the interests of the attorneys with the interests of the parties." *DCC*, 3 F.3d at

1573. In addition, the percentage-of-the-fund approach conserves judicial resources because "[i]t is much easier to calculate a percentage-of-the-fund fee than to review hourly billing practices over a long, complex litigation." *Swedish Hosp.*, 1 F.3d at 1269-70. In contrast, the lodestar method provides "incentive to spend as many hours as possible" and, therefore, does not encourage "early settlement." *Id.* at 1268-70; *see also* Manual for Complex Litigation § 14.121, at 188 (4th ed.), Westlaw (database updated July 2026) ("In practice, the lodestar method is difficult to apply, time consuming to administer, inconsistent in result, and capable of manipulation.").

The percentage method is especially appropriate in securities cases. The PSLRA expressly provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable *percentage* of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6) (emphasis added). Thus, "Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 n.33 (5th Cir. 2012); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005) (the PSLRA has made percentage-of-recovery the "standard" for attorneys' fees in securities cases). As a result, courts in this District have consistently used the percentage-of-fund approach in securities class actions settled through the formation of a common fund. *See, e.g.*, *Plymouth Cnty. Ret. Ass'n v. Advisory Bd. Co.*, 2020 WL 2299889, at *1 (D.D.C. May 6, 2020); *Howard v. Liquidity Servs. Inc.*, 2018 WL 4853898, at *7-8 (D.D.C. Oct. 5, 2018); *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *3 (D.D.C. Oct. 23, 1998).

Accordingly, the request by Lead Counsel for a percentage of the Settlement Fund is wholly proper, and consistent with the standard approach used in nearly every securities class action.

### C. All Relevant Factors Support the Percentage Fee Requested

The D.C. Circuit has not developed a specific list of factors for evaluating percentage-of-fund

fee requests, but courts in this District consider:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Stephens v. US Airways Grp., Inc.*, 102 F. Supp. 3d 222, 230 (D.D.C. 2015). This mirrors the list adopted by the Third Circuit in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir.2000). *See In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *11 (D.D.C. July 16, 2001) ("*Vitamins III*") (relying on *Gunter* to fashion the seven-factor test). As noted in *Gunter*, these factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." 223 F.3d at 195 n.1. Here, all weigh strongly in favor of the fee request for 30% of the Settlement Fund.

**1. The Size of the Fund and the Number of Persons Benefited Support the Fee Request**

The first and "most critical factor" from *Gunter* is the result achieved. *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016). Ultimately, clients are better off paying a higher fee for an exceptional result than a lower fee for a poor result. Accordingly, "[c]ourts have regarded exceptional benefits to a large class as grounds for a higher fee award." *Vitamins III*, 2001 WL 34312839, at *11. In *Vitamins III*, for example, a 34% fee award was supported by the fact that counsel secured a record-setting antitrust recovery on behalf of a class comprised of nearly 4,000 members. *Id.* at *10-11. Such is the case here.

If approved, the Settlement will be the largest federal securities fraud class action recovery in the history of this Circuit, surpassing the previous record set in *Fannie Mae* ($153 million) by almost $20 million. Indeed, the recovery is *ten times* larger than the $17.3 million median settlement amount for securities class actions in 2025. *See* Ex. 7 at 23; Ex. 8 at 1. This is itself a remarkable feat, especially given the complexities of the case and caliber of defense counsel, discussed more

fully below. *See In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (30% fee supported by fact that $111 million settlement was "one of the largest, if not the largest, securities fraud settlement in this District"); *see also Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 2981970, at *2 (D. Colo. July 15, 2021) (same where $135 million recovery was "the second-largest all-cash securities class action recovery ever obtained in this Distrist"). Moreover, the recovery provided by the Settlement is all-cash, which means Class Members will receive immediate compensation. *See Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 7 (D.D.C. 2008) ("[C]ash payments further enhance the value of the settlement.").

Further, the number of class members that will benefit from the recovery is vast. The Class includes nearly everyone who purchased or acquired Danaher stock during the Class Period. Stip. ¶ 1.6. Danaher is a widely traded stock, with average daily trading volume of more than 2.7 million shares (FAC ¶ 201(c)), and the Class Period spans almost two calendar years. Thus, notice of the Settlement was sent to more than ***730,000*** potential Class Members. *See* Ex. 6 ("Datz Decl.") ¶ 7. For this reason, the first *Gunter* factor clearly weighs in favor of the requested fee award. *See Baan*, 288 F. Supp. 2d at 17 ($32.5 million settlement exceeding median settlement amount in similar securities class actions would "inure to the benefit of a sizeable number of Baan investors" when "over 17,500 notices were mailed to potential members of the Class"); *see also Kanefsky v. Honeywell Int'l, Inc.*, 2022 WL 1320827, at *11 (D.N.J. May 3, 2022) ($10 million securities settlement that "benefits thousands of investors and is all cash" supported fee award).

**2. The Absence of Any Objections to Date Supports the Fee Request**

As noted above, notice of this Settlement was provided to more than 730,000 potential Class Members. Datz Decl. ¶ 7. The Summary Notice advised Class Members of their right to object to any aspect of the Settlement, including the fee request, and directed them to consult the full Notice on the Settlement website for more details on the Settlement and fee request. Ex. 6-A. The Notice

summarized key terms of the Settlement, stated that Lead Counsel would apply for an award of attorneys' fees "not to exceed 33 ⅓% of the Settlement Amount . . . plus interest," and explained the procedure for filing an objection. Ex. 6-B at 2-3. While a certain number of objections are to be expected in an action with a class as large as the one here, no objections have been received to date. *See* D'Aloia Decl. ¶ 117; Datz Decl. ¶ 13. "[T]he lack of objections is significant because," as noted in Plaintiffs' class certification motion (ECF No. 46-1 at 12-13), the Class contains "thousands of sophisticated . . . companies." *Vista Healthplan, Inc. v. Warner Holdings Co. III*, 246 F.R.D. 349, 364 (D.D.C. 2007). Thus, the reaction of the Class to date is strong evidence that the fee request is reasonable under the circumstances. *See Stephens*, 102 F. Supp. 3d at 230 (38% fee award supported by fact that "Class members raised no objection to the proposed fee award"); *Vitamins III*, 2001 WL 34312839, at *12 (same for 34% fee request); *Newbridge*, 1998 WL 765724, at *3 (same for 30% fee request).[2] In addition, Plaintiffs have both filed sworn statements fully endorsing the fee request. *See* Ex. 1 ("Hawkins Decl.") ¶ 5, Ex. 2 ("Einersen Decl.") ¶ 4. This too bolsters the requested fee award. *See Viropharma*, 2016 WL 312108, at *16 (that "[n]o Settlement Class member filed any objections" and "Lead Plaintiff supports the request for attorneys' fees" favors 30% award).

### 3. The Skill and Efficiency of Plaintiffs' Counsel Supports the Fee Request

The third factor—the skill and efficiency of the attorneys involved—is measured by the "quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Vitamins III*, 2001 WL 34312839, at *11 (quoting *Ikon*, 194 F.R.D. at 194); *accord Viropharma*, 2016 WL 312108, at *16. Here, each of these considerations supports the requested fee award.

[2] The deadline for submitting objections is August 20, 2026. ECF No. 55 ¶ 21. If any objections be filed by then, Plaintiffs will address them in their reply, due August 27, 2026. *Id.* ¶ 24.

"The prosecution and management of a complex national class action requires unique legal skills and abilities," and this is "particularly true in securities cases." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (citing *Ikon*, 194 F.R.D. at 194); *see also In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("The difficulty of securities litigation generally . . . requires skilled counsel familiar with the relevant statutes and case law."). Here, Plaintiffs are represented by some of the most experienced attorneys in this field who have a long and successful track record of prosecuting complex securities class actions across the country. *See* Exs. 3-C, 4-C, 5-B (firm resumes). Due to the highly technical nature of the claims, Lead Counsel relied on attorneys with extensive experience in biopharmaceutical manufacturing and developed case-specific expertise on the subject matters at issue—Danaher's operations, industry dynamics in response to the COVID-19 pandemic, and Danaher's unique financial metrics, among others—to cogently and effectively prosecute the claims. *See* D'Aloia Decl. ¶ 17.

The skill and expertise that Plaintiffs' Counsel brought to bear is apparent the record-setting result they secured for the Class. *See In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 132 (D.N.J. 2002) ("[T]he single clearest factor reflecting the quality of class counsels' services to the class are the results obtained."). This achievement is notable given the caliber of Defendants' counsel. Defendants are represented by preeminent securities litigators from Gibson, Dunn & Crutcher LLP, a firm with a national reputation for vigorous advocacy in complex cases. D'Aloia Decl. ¶ 138. That Plaintiffs' Counsel secured the Settlement in the face of such formidable opponents reflects the quality of their lawyering. *See Vitamins III*, 2001 WL 34312839, at *11 (the "quality of opposing counsel" weighed "in favor of the requested [34%] fee" in complex antitrust class action); *see also In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 942 (N.D. Ill. 2022) ("That Class

Counsel were able to secure a favorable settlement in the face of this [high caliber] opposition weighs in favor of a one-third fee."). Simply put, no company would agree to pay $172.5 million—breaking new ground in the D.C. Circuit—after retaining some of the most highly regarded defense attorneys unless the course of litigation demonstrated a tireless effort by Plaintiffs' Counsel to master the law and facts and assemble a team of lawyers that posed a credible threat. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *8-9 (D.D.C. June 16, 2003) ("*Lorazepam II*") ("The caliber of opposing counsel was clearly of the highest order and required that counsel for plaintiffs and the Class be capable of providing comparable services.").

The skill and expertise of Plaintiffs Counsel is also evident from the efficiency with which they prosecuted the case and the quality of their work. To successfully navigate the hurdles imposed by the PSLRA, Lead Counsel conducted an exhaustive investigation into the underlying facts, including interviews with former employees, an examination of analyst reports and trading data, and consultation with experts regarding damages, to prepare a thorough and well-organized amended complaint. *See* D'Aloia Decl. ¶¶ 17-22. In response to Defendants' motion to dismiss, Plaintiffs prepared a robust opposition that persuasively collected relevant law and marshaled the salient facts. *Id.* ¶¶ 25-26. That the pleading "withstood" the motion to dismiss without further amendment is a "testament" to their skillful work. *Omnivision*, 559 F. Supp. 2d at 1047. After defeating the motion to dismiss in substantial part, Plaintiffs' Counsel diligently and effectively managed discovery, consistently averting the need for court intervention by regularly conferring with opposing counsel to resolve contested issues. D'Aloia Decl. ¶¶ 30-60. Plaintiffs, working in close consultation with a highly recognized market expert, also prepared and filed a comprehensive and well-supported motion for class certification. *Id.* ¶¶ 72-73. This undoubtedly factored into Defendants' decision to enter the Settlement shortly thereafter, while the motion for class certification remained pending.

Finally, it bears emphasis that "counsel did not have the benefit of an SEC or other regulatory agency investigation and so prosecuted the case without assistance." *Ikon*, 194 F.R.D. at 194; *see also Baan*, 288 F. Supp. 2d at 19 (32% awards supported when "Plaintiffs' Counsel developed and prosecuted the case on their own without assistance from a governmental agency"); *Vitamins III*, 2001 WL 34312839, at *11 (34% fee request warranted when "substantial portion of [counsel's] investigation" was completed "prior to the implementation of any government investigation"). Indeed, Lead Counsel initiated the investigation into potential claims against Danaher on its own, without being prompted by the filing of a lawsuit by another firm. D'Aloia Decl. ¶ 13. This investigation ultimately led to the discovery of a key former employee whose information provided the factual basis for allegations strong enough to survive not just the PSLRA's heightened pleading standards but the "actual knowledge" prong of the PSLRA safe harbor, substantially contributing to the record-setting result achieved here. *See* ECF No. 37 at 18.

**4. The Complexity and Duration of the Litigation Supports the Fee Request**

For purposes of the fourth *Gunter* factor, it is generally accepted that "securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *In re Par Pharms. Sec. Litig.*, 2013 WL 3930091, at *10 (D.N.J. July 29, 2013). This is so because claims of this type "involve complicated issues of law and fact," *Fernandez v. DouYu Int'l Holdings, Ltd.*, 2025 WL 3564643, at *8 (D.N.J. Dec. 12, 2025), and "often require[e] expert testimony on questions of causation and damages." *Whitely v. Zynerba Pharms., Inc.*, 2021 WL 4206696, at *12 (E.D. Pa. Sept. 16, 2021). The exacting pleading requirements imposed by the PSLRA also make such claims "more difficult" than others to successfully prosecute past the pleading stage. *Ikon*, 194 F.R.D. at 194; *accord In re Cent. Eur. Distrib. Corp. Sec. Litig.*, 2014 WL 12608150, at *2 (D.N.J. Nov. 14, 2014).

Beyond the standard difficulties, this case presented its own unique set of challenges. The claims arose from the inherently complex subject matter of customer demand for equipment used to

manufacture biopharmaceuticals during a global pandemic. FAC ¶¶ 1-8. Moreover, Plaintiffs proceeded on the novel theory that, unlike most companies, Danaher *thrived* during the COVID-19 pandemic and Defendants defrauded investors by misrepresenting its ability to sustain that growth as the pandemic subsided. *Id.* Complicating matters, nearly every disclosure challenged by Plaintiffs included one or more "forward-looking statements" potentially insulated from liability under the PSLRA safe harbor. *See* ECF No. 37 at 7. Thus, Lead Counsel took great pains in the opposition to Defendants' motion to dismiss to (i) distinguish the statements pertaining to present fact from those that were forward-looking; and (ii) present evidence of "actual knowledge" sufficient to overcome the safe harbor. *See* ECF No. 32. In addition, many of the stock declines took place during a period of high volatility where many competitors experienced similar challenges, requiring Lead Counsel pinpoint when those trends first emerged relative to when Danaher reported them. *See* D'Aloia Decl. ¶ 22. Finally, there are relatively few decisions by the D.C. Circuit addressing the contours of the federal securities laws, creating some uncertainty regarding the prevailing law for key issues. All of these difficulties favor the fee request.

That the Settlement was achieved without protracted litigation does not weigh against the requested fee award. The percentage-of-fund approach was adopted by the D.C. Circuit to encourage "early settlement" and deter "inefficiency." *Swedish Hosp.*, 1 F.3d at 1268-69. Thus, "counsel should not be penalized for achieving an effective and efficient settlement." *Vitamins III*, 2001 WL 34312839, at *11; *see also Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 78 (D.D.C. 2011) (same). On the contrary, "[a] prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) (quoting *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97, 101-02 (3d Cir. 1985)). Prolonged litigation may well yield worse returns for class

members. In *Fannie Mae*, for example, counsel reached a settlement representing 4-8% of the "best case" recovery after nearly a decade of hard-fought litigation, including five years of fact and expert discovery. 4 F. Supp. 3d at 102-03. But in doing so, counsel incurred over ***$15 million*** in litigation expenses that were deducted from the recovery for the Class. *Id.* at 113. Achieving nearly the same outcome here at a fraction of the cost strongly supports the requested fee award. *See Vitamins III*, 2001 WL 34312839, at *11 (awarding 34% fee on record-setting settlement when "counsel achieved this Settlement expeditiously"); *Radosti*, 760 F. Supp. 2d at 78-79 (similar for 33% award).

**5. The Risk of Non-Payment Supports the Fee Request**

The risk of nonpayment assumed by counsel when they take on a complex class action on a contingency basis also favors approval. As other courts have explained, there are "immense risks undertaken by attorneys in prosecuting complex cases in which there is a great risk of no recovery" and "large attorneys' fees serve to motivate capable counsel to undertake these actions." *Vitamins III*, 2001 WL 34312839, at *12 (quoting *Ikon*, 194 F.R.D. at 197); *see also Ferrer v. CareFirst, Inc.*, 2019 WL 11320974, at *9 (fee awards must account for "need to incentivize other attorneys to undertake the risks of prosecuting class actions").

Here, Plaintiffs' Counsel prosecuted this case on a full contingency basis. D'Aloia Decl. ¶ 139. That is, they advanced a tremendous amount of attorney time and money to the matter (*see infra* Point I.C.6) with no guarantee of recovery. *Id.* Unlike Defendants' counsel, who are typically paid their fees and expenses on an ongoing basis, Plaintiffs' Counsel assumed the risk of going unpaid absent a victory on the merits or settlement. This risk is "especially high in securities class actions, as they are notably difficult and notoriously uncertain." *P. Van Hove BVBA v. Travel Grp., Inc.*, 2017 WL 2734714, at *12 (D.N.J. June 26, 2017). As detailed more fully in the accompanying Final Approval Motion, Plaintiffs faced significant risks to prevailing on a variety of issues at nearly every stage of proceedings, including class certification, summary judgment, trial, or appeal. Thus,

"[t]he risk of nonpayment through either an award of summary judgment to Defendants or loss at trial was significant and real in this case." *Lorazepam II*, 2003 WL 22037741, at *8 (citing *In re Aetna Inc. Sec. Litig.*, 2001 WL 20928, at *15 (E.D. Pa. Jan. 4, 2001)).

These risks are not merely hypothetical. There are scores of hard-fought lawsuits where, because of the discovery of facts unknown when the case began, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, extensive professional efforts go uncompensated. *See, e.g.*, *In re Mylan N.V. Sec. Litig.*, 666 F. Supp. 3d 266 (S.D.N.Y. 2023) (Pomerantz case lost on summary judgment after 6 years of protracted litigation and grant of class certification), *aff'd sub nom. Menorah Mivtachim Ins. Ltd. v. Sheehan*, 2024 WL 1613907 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 436 (2024); *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74 (2d Cir. 2023) (class decertified following more than 12 years of litigation and numerous appeals after plaintiffs' counsel incurred almost $7 million in expenses and worked over 115,000 hours); *In re Alstom S.A. Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (95% of plaintiffs' damages eliminated on eve of summary judgment after completing significant foreign discovery following Supreme Court reversal of 40 year-old circuit court precedent on foreign liability); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict after four weeks of trial and five years of litigation).

Because of these substantial risks, securities class actions are often seen as "undesirable" work for attorneys absent a premium to compensate for the risk. *DaVita*, 2021 WL 2981970, at *3. This especially apparent in cases where, as here (ECF No. 21), no other firm sought appointment as lead counsel. *DaVita*, 2021 WL 2981970, at *3; *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) ("[C]ounsel should be rewarded for taking on a case from which other law firms shrunk . . . the proper incentive here is a 30% fee."). Thus, Plaintiffs'

Counsel's devotion of substantial resources, without any guarantee of recovery, favors approval of the requested fee. *Radosti*, 760 F. Supp. 2d at 78 (33% fee justified when counsel "faced a significant risk of nonpayment, having taken the case on a contingency basis and expend[ed] significant resources on investigation before negotiating the settlement"); *Lorazepam II*, 2003 WL 22037741, at *8 (same for 30% fee when counsel "engaged in extensive motions practice and conducted considerable discovery" for four years with no guarantee of compensation); *see also Viropharma*, 2016 WL 312108, at *17 (the "risk created by undertaking an action on a contingency fee basis militates in favor of approval" of 30% fee).

**6. The Amount of Time Plaintiffs' Counsel Devoted to the Action Supports the Fee Request**

Despite the many challenges posed by the claims, and the potential of not receiving any remuneration for their efforts, Plaintiffs' Counsel advanced over 25,000 hours in uncompensated time, representing approximately $16,630,907.50 in legal services, and incurred $504,502.71 in out-of-pocket expenses, successfully securing a highly favorable Settlement for the benefit of the Settlement Class. *See* D'Aloia Decl. ¶¶ 135, 152. This is time and money that could have been devoted to other matters, and for which Plaintiffs' Counsel have received no compensation or payment since the inception of the Action more than three years ago. Furthermore, additional work will also be required of Lead Counsel on an ongoing basis, including: preparation for, and participation in, the Settlement Fairness Hearing; responding to any objections; supervising the claims administration process being conducted by the Claims Administrator; and working with the Claims Administrator on the distribution of the Net Settlement Fund to Class Members who have submitted valid Proofs of Claim. D'Aloia Decl. ¶ 136. However, Lead Counsel will not seek additional payment for this work. *Id.* Thus, the significant investment of time litigating this Action for the benefit of the Class weighs in favor of the requested attorneys' fee.

### 7. Fee Awards in Similar Cases Support the Fee Request

When it adopted the percent-of-fund approach, the D.C. Circuit surveyed common fund cases and found that "a majority of . . . fee awards fall between twenty and thirty percent." *Swedish Hosp.*, 1 F.3d at 1272. Accordingly, courts in this Circuit have granted numerous fee requests for 30% or more in complex class actions, including securities fraud class actions. *See, e.g.*, *In re Nifedipine Antitrust Litig.*, 2011 WL 13392312, at *12 (D.D.C. Jan. 1, 2011) (33% of $35 million antitrust settlement); *Freeland v. Iridium World Commc'ns, Ltd.*, No. 1:99-cv-1002, ECF Nos. 263-65 (D.D.C. Oct. 23, 2008) (33% of securities fraud settlements totaling $43.1 million); *Oncology & Radiation Assocs. v. Bristol-Myers Squibb Co.*, No. 1:01-cv-2313, ECF No. 75 ¶¶ 7, 14 (D.D.C. Sept. 3, 2003) (30% of $65.8 million antitrust settlement); *In re MCI Commc'ns Corp. Sec. Litig.*, No. 1:97-cv-1976, No. 113 ¶¶ 12, 13(a) (D.D.C. Nov. 16, 2006) (33% of $4.5 million securities fraud settlement); *Lorazepam II*, 2003 WL 22037741, at *9-10 (30% of $35 million antitrust settlement); *Vitamins III*, 2001 WL 34312839, at *10-12 (34% of $359 million antitrust settlement); *Newbridge*, 1998 WL 765724, at *2-3 (30% of $4.3 million securities fraud settlement).

*Vitamins III* is instructive. There, then-Chief Judge Hogan awarded a fee in the amount of 34% of a $359 million antitrust settlement. 2001 WL 34312839, at *11-12. In finding the award reasonable, Judge Hogan held that the award was warranted in light of (i) the record size of the settlement; (ii) the experience and professionalism of counsel; (iii) the complex factual and legal issues that required counsel to interview witnesses and retain experts in connection with their pre-suit investigation; (iv) the completion of investigatory efforts without the assistance of a government investigation; (v) the attainment of the settlement relatively early in the case; and (vi) the lack of any objections to the fee request. *Id.* All that is present here and more.

Indeed, the fee request is consistent with awards granted by courts outside this District in securities class actions with similar recoveries. *See, e.g., Schuh v. HCA Holdings, Inc.*, 2016 WL 10570957, at *1 (M.D. Tenn. Apr. 14, 2016) (30% of $215 million cash settlement); *Chabot v. Walgreens Boots Alliance, Inc.*, 2024 WL 3250930, at *1 (M.D. Pa. Feb. 7, 2024) (30% of $192.5 million cash settlement); *Anwar v. Fairfield Greenwich Ltd.*, 2015 WL 14085135, at *6 (S.D.N.Y. Nov. 15, 2015), 2016 WL 11801286, at *5 (S.D.N.Y. May 6, 2016) (30% of two settlements totaling $180 million in cash); *In re Envision Healthcare Corp. Sec. Litig.*, 2024 WL 1270007, at *1 (M.D. Tenn. Mar. 21, 2024) (30% of $177.5 million cash settlement); *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *9-11 (S.D.N.Y. Sept. 29, 2022) (33% of $165 million cash settlement); *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*, 2019 WL 1529517, at *1 (W.D. Ark. Apr. 8, 2019) (30% of a $160 million cash settlement); *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *5-7, *9 (D. Ariz. Apr. 20, 2012) (33% of $145 million cash settlement); *DaVita*, 2021 WL 2981970, at *4 (30% of $135 million cash settlement); *In re Alta Mesa Res., Inc. Sec. Litig.*, 2025 WL 1901350, at *1 (S.D. Tex. May 6, 2025) (33% of $126.3 million cash settlement).[3]

The fee request is also in line with awards in other types of complex class actions that require extensive pre-suit investigation, high risk, specialized knowledge, and vigorous advocacy. *See, e.g., Jien v. Perdue Farms, Inc.*, 2025 WL 3725489, at *1 (D. Md. June 5, 2025) (33% of $398.05 million settlement in antitrust class action); *Rogowski v. State Farm Life Ins. Co.*, 2023 WL 5125113, at *5 (W.D. Mo. Apr. 18, 2023) (33% of $325 million settlement for class action arising from insurance overcharges); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2022 WL 2663873, at *4-6 (D. Kan. July 11, 2022) (33% of $264 settlement in antitrust class action); *In re U.S. Foodservice, Inc. Pricing Litig.*, 2014 WL 12862264, at *3 (D. Conn. Dec. 9, 2014) (33% of

[3] As noted above, *Fannie Mae* involved a $153 million common fund settlement. However, counsel in that case sought an award of only 22% of the common fund, and the Court did not reduce or otherwise decline to award the amount requested. *See Fannie Mae*, 4 F. Supp. 3d at 110-13.

$297 million settlement for RICO class action arising from nationwide price-inflation scheme); *Standard Iron Works v. ArcelorMittal*, 2014 WL 7781572, at *1 (N.D. Ill. Oct. 22, 2014) (33% of $163.9 million settlement in antitrust class action); *Overdraft Litig.*, 830 F. Supp. 2d at 1335, 1359 (30% of $410 million settlement for class action arising from debit card overdraft fees).

### D. Additional Considerations Support the Requested Fee Award

#### 1. The Requested Fee Is Consistent with the Fee Cap Negotiated with Plaintiffs at the Outset of the Action

In *Swedish Hospital*, the D.C. Circuit adopted the percentage-of-fund approach to approximate the fee that would prevail in the "marketplace" for legal services and encouraged courts to consider using various "mechanisms" to facilitate that determination. 1 F.3d at 1269-70; *see also Vitamins III*, 2001 WL 34312839, at *12 ("[T]he percentage of recovery method is meant to simulate awards that would otherwise prevail in the market."). There is no better proof of a "market rate" for a given suit than a fee agreed-upon between a properly appointed PSLRA lead plaintiff and counsel *ex ante*, at the outset of the case. *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133-34 (2d Cir. 2008); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001) (adopting a "presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel").

Here, both Lead Plaintiff and Derek Einersen individually executed retainer agreements with Pomerantz which specified that Pomerantz's fee would not exceed 34% of any settlement or judgment achieved in the Action. D'Aloia Decl. ¶ 142. That fee cap is consistent with customary rates for contingency work in private actions. *See, e.g.*, *Blum*, 465 U.S. at 903 n.* (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."); *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 2024 WL 815503, at *16 (E.D. Pa. Feb. 27, 2024) ("[I]n private contingency fee cases . . . plaintiffs' counsel

routinely negotiate agreements providing for between thirty and forty percent of any recovery."). Accordingly, the fee agreements negotiated by Plaintiffs confirm that the fee request—which is *less* than the fee specified in Plaintiffs' retainer agreements (Hawkins Decl. ¶ 6; Einersen Decl. ¶ 5)—is a fair and reasonable percentage award for a suit of this nature. *See In re Signet Jewelers Ltd. Sec. Litig.*,2020 WL 4196468, at *17 (S.D.N.Y. July 21, 2020) (fee in securities fraud class action is reasonable when consistent with negotiated fee agreement with lead plaintiff).

**2. A Lodestar Cross-Check Confirms That the Fee Request Is Reasonable**

Although not required, courts have discretion to compare the percentage fee request against counsel's lodestar to "cross-check" its reasonableness. *See In re Black Farmers Discrimination Litig*., 953 F. Supp. 2d 82, 101 (D.D.C. 2013) ("In this circuit, such a lodestar cross-check is not required, although district courts are free to employ such a cross-check at their discretion to confirm the reasonableness of an award.") (collecting cases). When used as a cross-check, the review "need entail neither mathematical precision nor bean-counting." *Nat'l Veterans Legal Servs. Program v. United States*, 724 F. Supp. 3d 1, 23 (D.D.C. 2024) ("*Nat'l Veterans I*") (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005)), *aff'd*, 170 F.4th 1353 (Fed. Cir. 2026) ("*Nat'l Veterans II*"). Instead, "district courts may rely on summaries submitted by attorneys." *Id.* After all, the percentage approach was adopted over the lodestar method because it is far less burdensome, and requiring courts to engage in a full-blown lodestar review would "defeat one of the primary benefits of the percentage of the fund method." *Black Farmers*, 953 F. Supp. 2d 82, 101 n.8 (citing *Swedish Hosp.*, 1 F.3d at 1269-70). Here, the lodestar cross-check confirms the reasonableness of Lead Counsel's fee request.

Plaintiffs' Counsel devoted a total of 25,477.35 hours of attorney and other professional time to prosecuting this Action on behalf of the Class. D'Aloia Decl. ¶ 135. Plaintiffs' Counsel's combined lodestar, calculated by multiplying the hours spent on the Action by each timekeeper by

his or her current hourly rate,[4] is $16,630,907.50. *Id*. Notably, Plaintiffs' Counsel's lodestar does not include the additional time that they will continue to devote to the case on behalf of the Class by, for example, directing the claims administration process and overseeing the distribution of Settlement proceeds to Class members, nor does it include the time spent preparing this Motion. *Id.*

Accordingly, the 30% fee request represents a multiplier of 3.11 on Plaintiffs' Counsel's lodestar. This is well within the range of lodestar multipliers found to be reasonable for complex class actions, with "multiples ranging up to four . . . frequently awarded." *Black Farmers*, 953 F. Supp. 2d at 102 (quoting *Lorazepam II*, 2003 WL 22037741, at *9). As noted above (Point I.C.5), counsel are typically awarded fees above the market value of their services in contingency cases to account for the risks they assume in doing so, especially challenging ones like this Action. Indeed, fees have been approved in other securities class action settlements with multipliers far in excess of that here. *See, e.g.*, *Dicker v. TuSimple Holdings, Inc.*, 2024 WL 5181968, at *1-2 (S.D. Cal. Dec. 18, 2024) (awarding fee on $189 million settlement with 7.92 multiplier); *In re Alphabet, Inc. Sec. Litig.*, 2024 WL 4354988, at *6-7 (N.D. Cal. Sept. 30, 2024) (awarding fee on $350 million settlement with 4.58 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (awarding fee on $126 million settlement with a 6.96 multiplier); *In re Charter Commc'ns, Inc. Sec. Litig.*, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (awarding fee on $146.25 million settlement with 5.61 multiplier); *In re Xcel Energy, Inc. Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 989 (D. Minn. 2005) (awarding fee on $80 million settlement with 4.7 multiplier).

[4] The Supreme Court has approved using current hourly rates to compensate for inflation, delay in payment, and the loss of interest. *See Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 283-84 (1989); *see also James v. Dist. of Columbia*, 302 F. Supp. 3d 213, 226 (D.D.C. 2018) (citing *Jenkins*, 491 U.S. at 283-84). Thus, current hourly rates are regularly used for the cross-check in securities class actions. *See, e.g.*, *Howard*, 2018 WL 4853898, at *8 n.1. These rates are far less than those charged by defense firms for comparable services (Ex. 9) and supported by the firm resumes submitted herewith (Exs. 3-C, 4-C, 5-B).

## II. COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

"In addition to being entitled to reasonable attorneys' fees, class counsel in common fund cases are also entitled to reasonable litigation expenses from that fund." *In re Domestic Airline Travel Antitrust Litig.*, 2019 WL 5135424, at *2 (D.D.C. May 14, 2019) (collecting cases); *see also Stephens*, 102 F. Supp. 3d at 231 (quoting *Lorazepam II*, 2003 WL 22037741, at *10). Plaintiffs' Counsel seek reimbursement for $504,502.71 in out-of-pocket litigation expenses that were reasonable and necessary to the prosecution of the claims asserted in the action. D'Aloia Decl. ¶¶ 149, 152. In assessing whether expenses are compensable in common fund cases, courts look to whether the costs are of the type typically billed by attorneys to paying clients in the marketplace. *See Domestic Airline Travel*, 2019 WL 5135424, at *2 ("[C]ourts have routinely awarded expenses for which counsel would normally directly bill their client."). All were here.

Plaintiffs' Counsel's declarations itemize the various categories of expenses incurred. *See* Ex. 3 ("Pomerantz Decl.") ¶ 6; Ex. 3-B; Ex. 4 ("Cohen Milstein Decl.") Ex. 4-B. The lion's share of expenses were for experts, which totaled $374,207.50, or approximately 74% of the total costs. As noted in the D'Aloia Declaration, Lead Counsel retained a financial economist in connection with class certification to opine on, inter alia, the efficiency of the market for Danaher's stock and whether the calculation of damages was subject to a common methodology. D'Aloia Decl. ¶¶ 72-73. This expert also performed extensive pre-suit analyses in connection with loss causation and damages, provided input regarding the mediation, and helped develop the Plan of Allocation. *Id.* ¶¶ 21, 78, 121. Plaintiffs' Counsel also incurred $40,000 in mediation expenses. Here, the work done by David Murphy was crucial to the resolution of the Action. *Id.* ¶¶ 76, 79. Plaintiffs' Counsel also incurred $25,776.25 for investigative services, which led to the identification of former employees with relevant knowledge, including those used in the FAC. *Id.* ¶ 19. The remainder of expenses

consisted primarily of court filing fees, online legal research fees, document hosting fees, travel costs, and other miscellaneous expenses. Because these expenses were incurred with no guarantee of recovery, Plaintiffs' Counsel had a strong incentive to avoid, and did not incur, any expenses that were unnecessary. *Id.* ¶ 150.

These are precisely the type of expenses typically incurred by counsel in complex class action litigation and billed to clients and, thus, regularly reimbursed. *See, e.g.*, *Randle v. SunTrust Bank, Inc.*, 2024 WL 706807, at *11 (D.D.C. Feb. 21, 2024) (awarding costs associated with "mediation" and "litigation expenses such as travel and computerized research, all of which are regularly reimbursed"); *Domestic Airline Travel*, 2019 WL 5135424, at *1-2 (same for "attorney travel for case-related events, legal research, conference call servicing, postage, electronically-stored information ('ESI') hosting . . . economic and industry expert and consulting services"); *Howard*, 2018 WL 4853898, at *8 (same for "travel, consulting experts, and conducting mediation, as well as for costs related to deposition transcripts and computerized research"); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 208 (D.D.C. 2011) (same for "Experts/Investigators" and "travel, meals, and lodging; legal research; court fees; photocopies; and telephone calls," which are "the kinds of expenses expected and anticipated during the ordinary course of litigation").

The lack of any objections to Plaintiffs' Counsel's anticipated expenses further supports approval. In the Notice, Class Members were informed that Lead Counsel planned to request reimbursement of litigation expenses up to $850,000. Ex. 6-B at 2. The lack of any objections to that amount—which is even more than that sought by Plaintiffs' Counsel—provides further support for the expense request. *See Trombley*, 826 F. Supp. 2d at 208 (granting expenses "because no objections have been made as to the amount); *Domestic Airline Travel*, 2019 WL 5135424, at *2 (same where "there were no objections filed with Class Members with regard to litigation expenses

that have already been incurred"); *Newbridge*, 1998 WL 765724, at *3 (same "[i]n light of . . . the absence of class objection to counsel's reasonable request for reimbursement of expenses").

In sum, the expenses incurred by Plaintiffs' Counsel, in the amount of $504,502.71, were reasonably and necessarily incurred in the prosecution of the Action and should be approved.

## III. THE AWARD TO PLAINTIFFS SHOULD BE APPROVED

Lead Counsel also seeks service awards for Plaintiffs in the amount of $35,000 for Lead Plaintiff and $30,000 for Derek Einersen for their valuable contributions to the Action. Such awards are "common" in class action litigation, "especially when there is a common fund created to benefit the entire class." *Randle*, 2024 WL 706807, at *9. They are meant to "compensate plaintiffs for the services they provided and the risks they incurred" on behalf of absent class members. *Id.*; *see also Nat'l Veterans II*, 170 F.4th at 1366 (representative parties "invest in the case more heavily than their unnamed counterparts" and service awards "recognize the efforts of the representative plaintiffs to obtain recovery for the class").

Plaintiffs dedicated substantial personal time and effort to prosecuting the Action for the 3benefit of the Class. *See* Hawkins Decl. ¶ 4; Einersen Decl. ¶ 3. They met with counsel prior to their involvement in the Action, reviewed drafts of complaints and motion papers, assisted with responding to Defendants' discovery requests, facilitated the collection of electronic records, made travel plans and prepared to be deposed, regularly communicated with Plaintiffs' Counsel by email and phone, and were apprised of developments in the case so that they could fulfill their role in overseeing the litigation. Hawkins Decl. ¶ 4; Einersen Decl. ¶ 3. In addition, Plaintiffs communicated with Lead Counsel in advance of and during the settlement negotiations, and their efforts have played an instrumental part in securing the Settlement. Hawkins Decl. ¶ 4; Einersen Decl. ¶ 3. As such, their requests for modest compensatory awards are reasonable. Without their participation, the Settlement would not have been achieved. *See* D'Aloia Decl. ¶ 156.

The requested compensatory awards for each Plaintiff are fair and reasonable. Courts in this district have approved far larger awards to those who perform similar activities for the benefit of absent class members. *See, e.g.*, *Randle*, 2024 WL 706807, at *10 & n.3 (granting service award of $175,000 and collecting cases with similar awards); *Jones v. Chopra*, No. 1:18-cv-02132, ECF No. 181 at 2 (D.D.C. Jan. 18, 2024) (granting each representative service award of $50,000 each); *Nifedipine*, 2011 WL 13392312, at *1 (granting four class representatives service award of $60,000 each); *Meijer v. Barr Pharms., Inc.*, 2009 WL 10744520, at *5 (D.D.C. Apr. 20, 2009) (granting five class representatives service award of $50,000 each); *see also Pearlstein*, 2022 WL 4554858, at *11 (collecting securities cases awarding between $50,000 and $100,000 per representative). These awards are especially reasonable because they represent a mere 0.04% of the $172.5 million fund. *See Lorazepam II*, 2003 WL 22037741, at *11 (approving service awards that "amount to only about 0.2%" of the settlement); *Pearlstein*, 2022 WL 4554858, at *11 (same for awards that represent "approximately 0.3%" of the settlement).

As with expenses, the lack of any objections to the proposed awards—which the Notice stated would not exceed $70,000 in aggregate—reinforces the conclusion that they are reasonable under the circumstances. *See Vista Healthplan*, 246 F.R.D. at 358 n.3, 365 (granting service awards where "Class Members were advised of these potential awards via the notice program" and "no objections to [the] incentive awards were received.").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should (1) award attorneys' fees in the amount of 30% of the Settlement Fund; (2) grant reimbursement of $504,502.71 in litigation expenses; and (3) approve service awards to Plaintiffs in the amount of $35,000 for Lead Plaintiff and $30,000 for Derek Einersen.

Dated: August 13, 2026

Respectfully submitted,

*/s/ Justin D. D'Aloia*
Jeremy A. Lieberman (*pro hac vice*)
Justin D. D'Aloia (*pro hac vice*)
Guy Yedwab
**POMERANTZ LLP**
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
jdaloia@pomlaw.com
gyedwab@pomlaw.com

*Counsel for Plaintiffs and Lead Counsel for the Proposed Class*

Daniel S. Sommers (Bar No. 416549)
Jan E. Messerschmidt (Bar No. 1031488)
**COHEN MILSTEIN SELLERS & TOLL LLP**
1100 New York Ave., NW
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
dsommers@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

*Counsel for Plaintiffs and Liaison Counsel for the Proposed Class*

Brian Schall
David J. Schwartz
**SCHALL, BROWN & SCHWARTZ LLP**
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Tel: (424) 303-1964
Fax: (213) 519-5876
brian@schallfirm.com
david@schallfirm.com

*Additional Counsel for Plaintiff Derek Einersen*

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5.3, I hereby certify that, on this 13th day of August, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Justin D. D'Aloia*
Justin D. D'Aloia